## WOODES *vs.* DENNETT.

The account books of a party, verified by his oath, are not evidence, except of charges by the creditor against the debtor, when they stand to each other in the relation of plaintiff and defendant.

They are not evidence where the dealing between the debtor and creditor is, as to the parties to the suit, a mere collateral matter.

In an action upon an agreement by the defendant to pay the plaintiff for articles delivered to one Pickering, the defendant offered evidence that Pickering had paid the plaintiff therefor by his labor. To rebut this evidence the plaintiff offered

his book of accounts, verified by his oath, containing charges against Pickering while he was in the employ of the plaintiff.—*Held*, that the book was inadmissible.

ASSUMPSIT, upon an account annexed to the writ, for boarding and nursing George Pickering, in the months of April and May, 1832. The action was founded upon an alleged agreement by the defendant to pay the plaintiff therefor, if Pickering did not.

The defendant contended that Pickering did pay the plaintiff, by his labor; and introduced evidence tending to show that the plaintiff employed Pickering to cut wood immediately previous to his sickness, and that his wages would amount to a larger sum than that charged in the plaintiff's account.

The plaintiff, for the purpose of rebutting the evidence, offered his book of accounts, containing several charges against Pickering, while he was employed by the plaintiff, with his oath in verification of them. To the admission of the book the defendant objected, but it was admitted by the court.

The jury returned a verdict for the plaintiff, and the defendant moved for a new trial, on account of the admission of the evidence.

*Emerson*, (with whom was *Bartlett*,) for the plaintiff.

*Elkins*, (with whom was *James Bell*,) for the defendant.

GILCHRIST, J. It may be convenient, in order to determine the validity of the exception taken to the admission of the book of accounts, to ascertain, as far as it may be done, the reason why in this country the account books of a party to the suit have been admitted as evidence of his claim against his opponent. The reason cannot be, that they are, in general, the best evidence the nature of the case admits of, because they are verified by a party who testifies in his

own favor, particularly as the courts have authorized, at different times, the admission of books kept by persons engaged in every variety of business, of every degree of education or want of education, and relating to transactions of the most trivial and of the most important character. The rule requiring the production of the best evidence of which the case is, in its nature, susceptible, is designed to prevent the introduction of any evidence which, from the nature of the case, supposes that better evidence is in the possession of the party. It excludes only that evidence which itself indicates the existence of more original sources of information. *Greenl. on Ev.* 93. Upon this principle was based the judgment of the court in the case of *Eastman* vs. *Moulton,* 3 *N. H. Rep.* 156. There it appeared, on the cross-examination of the defendant, that the goods charged in his set-off were delivered, not to the plaintiff, but to the servant of the plaintiff; and the court held, that, as there was better evidence, the book was inadmissible. But where, as in the case of *Curren* vs. *Crawford,* 4 *S. & R.* 3, the words and figures, " ‖ 15 B. Marpol. 60 Thermity Coren," were admitted as evidence of a charge of lime ; and where, as in the case of *Prince* vs. *Smith,* 4 *Mass.* 455, it is held that regard may be had to the degree of education of the party, in determining whether a book be admissible, the greatest difficulty seems to be, not to ascertain what should be admitted, but whether anything in the semblance of a book should be excluded. If the case first cited be law, and the book be not a mere blank, any marks in it may be explained to signify any thing which will maintain the case; and if the latter case be law, the book will be admissible, if it be, on the whole, as fair a record as an illiterate man might reasonably be expected to make. That two such distinguished tribunals should have pronounced judgments which, if followed, would render it nearly impossible to impose any bounds to the admission of evidence of this description, was undoubtedly owing to the fact that the great cheapness and conve-

nience of this mode of proof, had insensibly introduced a laxity in the practice, which the courts in question found it difficult to limit to the cases for which such evidence was originally designed.

But, however lax may have been the practice in admitting evidence of this description, the books generally agree in attributing its admission to motives of convenience. The reasoning has been, that from the character of the charges, and the general mode of transacting business in this country, it would be extremely difficult to obtain other proof, although not theoretically impossible, and although, in a given case, a witness might be found who witnessed the delivery of the articles, or happened to know that the services were rendered. It is said, in the case of *Poultney* vs. *Ross,* 1 *Dall.* 238, that in this country, from the necessity of the case, as business is often carried on by the principal, and many of our tradesmen do not keep clerks, the books, with the oath of the plaintiff, have always been admitted. And the same reason is given in *Prime* vs. *Smith,* 4 *Mass.* 457, where the practice is said to have arisen from a conformity to the actual state of things. To the same effect is *Vosburgh* vs. *Thayer,* 12 *Johns.* 461, in which case, however, Platt, J., dissented from the court, and denied that the admission of such evidence was necessary. We do not understand, however, that when courts speak of the necessity of the admission of this kind of evidence, any thing more is meant than that in practice its admission is highly convenient, where the dealings between the parties take place often without the presence of third persons, and are so numerous that it would be difficult to have written evidence of each, and when the procuring of formal proofs would hardly compensate for the time bestowed : the charges being so frequent in succession, and generally so trivial in their individual amount. In the case of *Beach* vs. *Mills,* 5 *Conn. R.* 496, Mr. Justice Brainard calls it a kind of moral necessity, and remarks that it is not to be expected that in the com-

mon intercourse of life there should always be witnesses, either of the delivery or the payment for an article. *Dunn* vs. *Whitney*, 1 *Fairf.* 9.

Such, undoubtedly, is the true explanation of the origin and gradual growth of this practice; and the reason and the authorities seem to confine it to transactions between the debtor and creditor, when they stand to each other in the relation of plaintiff and defendant. In the case of *Poultney* vs. *Ross*, 1 *Dall.* 238, it is said that the shop book of a tradesman had not been admitted except to charge the original debtor to whom the goods were sold, and that it was not admissible to prove the promise of a third person to pay the debt. *Kerr* vs. *Love*, 1 *Wash.* 172; *Deas* vs. *Darby*, 1 *Nott & McC.* 436. But in the case of *Mifflin* vs. *Bingham*, 1 *Dall.* 272, it is intimated by McKean, C. J., that the books of the defendant were admissible to determine a collateral question, whether a third person were the defendant's debtor at a particular period. It was, however, afterwards held by the same court, that if such third person were a competent witness, as his oath would be better evidence than the books, they would not be admissible. *Juniata Bank* vs. *Brown*, 5 *S. & R.* 226. In the case of *The People* vs. *Genung*, 11 *Wend.* 18, upon an indictment for having obtained the signature of a person to a note by false pretences, it was held that the account books of the prisoner were not, of themselves, without other testimony, competent evidence of the state of the accounts between him and the prosecutor.

Without enquiring into the nature of the transaction that may be proved by the book and oath of the party—upon which point the decisions are very numerous—it is sufficient to say that such evidence is confined to suits between the debtor and creditor, whether the claim be made by the plaintiff or by the defendant, by way of set-off. The "moral necessity" which, it is said, requires this proof in such cases, does not exist where the dealing between the debtor and

creditor is, as to the parties to the suit, a mere collateral matter; for in such case either the debtor or creditor, as the case may be, is a competent witness in chief. In the case before us, the defendant having offered evidence that Pickering was not indebted to the plaintiff, the latter produced his book to show thereby that Pickering was indebted to him. This indebtment was, as to the parties to the suit, a collateral matter, and was not susceptible of proof by the book and oath of the plaintiff. The judgment of the court, therefore, is, that the evidence was improperly admitted.

*Verdict set aside.*