## GAGE INSLEE v. CORNELIUS D. PRALL, EXECUTOR OF ISAAC PRALL, DECEASED.

Books of account cannot be received in evidence in New Jersey to prove the payment of money. Nor are they evidence of money lent; the *necessity* of admitting them as evidence of goods sold, services rendered, and other matters in the usual course of business, for which the common law rule has been relaxed, does not exist in case of payments or advance of money.

This cause came into this court by writ of error to Middlesex Circuit Court. The action below was assumpsit upon a promissory note, given by Inslee, the defendant below, to Isaac Prall, the testator. The plaintiff there, having proved and given in evidence the note upon which the action was brought, rested. The defendant offered in evidence his books of account, being his day-books or books of original entries, to prove, by entries made therein, payments made by him to the testator on account of the note. The books were regularly kept, and the charges were interspersed with charges made against divers persons of matters that were proper subjects of book account, all entered daily in order of time, and were spread over a period of several years. Some of them corresponded with endorsements made by the testator upon the note, and others of them with payments proved by witnesses. The books were offered to prove the cash payments only. These books were objected to by the plaintiff, and overruled by the court. To this ruling a bill of exceptions was taken by the defendant below.

The only error assigned was the overruling of these books of account.

Argued before the CHIEF JUSTICE, and POTTS and ELMER, Justices, by *Schenck*, for plaintiff in error, *Leupp*, for defendant.

*Schenck*, for plaintiff, insisted that as these books were regularly kept as daily entries, and some of the charges corroborated by other evidence, that they should have been admitted ; and referred to 2 *Halst.* 345, *Craven* v. *Shaird ;* 1 *Halst.* 95, *Wilson* v. *Wilson.*

In *Carman* v. *Dunham,* 6 *Halst.* 189, there was only a single item, no mutual dealings.

*Leupp*, for defendant. This question is *res adjudicata* in New Jersey. 2 *Halst.* 345, *Randolph* v. *Simpson ;* 2 *Halst.* 61, *Swing* v. *Spark.*

POTTS, J., delivered the opinion of the court.

This action was brought to recover the amount due on a

promissory note, given by Gage Inslee to Isaac Prall, the testator. On the trial, the defendant below offered in evidence his books of account, to prove certain payments of cash to the testator on account of said note. There were no other charges in these books against the testator subsequent to the date of the said note; but these charges for cash were interspersed with charges against other persons, in regular order as to date, and run through a course of some years. Two of the charges agreed with endorsements on the note, some others with credits entered in the testator's book of accounts, and there was some evidence as to the correctness of others still. The court admitted all the other evidence, but rejected the defendant's books, being of opinion that they could not be received as legal evidence to prove the payment of cash on account of said note, and this is the single matter assigned and relied on for error.

The doctrine, that a plaintiff or defendant in a court of justice may give his own books of account in evidence to sustain a claim against his adversary, is a creature of the courts. It does not rest on any statutory authority; it is not derived from the common law, and is in derogation of one of its leading principles, to wit, that a party shall not be permitted to make evidence for himself. It had its origin in a very early period of our judicial history, and was founded on what was supposed to be the necessity of things. The credit system, which always pervaded and formed a part of almost every branch of business in this state, made it absolutely necessary that memoranda of articles sold, of work done, and of services rendered, should be kept in all cases where they were not paid for at the time. The more particular such entries were made, and the more permanent the record of them was, the better for the purpose had in view, that of preserving the memory of the transaction. But still a most important end was not accomplished, unless these memoranda could in some way be used in evidence in case of dispute. It was for these reasons and for this end that regular books of original entries came to be universally adopted, and that courts permitted parties to produce these books in court in all cases; and if they were proved

to be the books of original entry used by the party in the regular course of his business, in which he made his daily entries of charges against all his customers, and the books appeared to be fair upon their face, and not open to suspicion or impeached for correctness, they were allowed to go to the jury as *prima facie* evidence of the truth of the charges they contain.

This general rule, thus established by the courts, has been so long acquiesced in, that its authority is now undoubted ; but cases occasionally arise in its particular application of more or less difficulty. Furnishing, as it does, a ready and easy mode by which a man may guard himself against the repudiation of an honest claim, it at the same time arms him with the means of enforcing a fictitious or unjust demand against his neighbor by evidence, in many cases not easily rebutted. Such being the uses to which it might be applied, it was to be expected that the practice of making every species of transaction on which a claim could be founded the subject of a book entry would occasionally be resorted to ; and that, on the other hand, courts would constantly feel the absolute necessity of restraining the application of the rule within safe and proper limits. The effort to fix these limits has been to a great extent successful. It has been settled that a book of account is no evidence to charge a defendant with goods delivered to a third person, unless a written order is produced. *Tenbroke* v. *Johnson, Coxe* 288 ; nor of unliquidated damages, *Swing* v. *Sparks,* 2 *Halst.* 59 ; nor of a settlement or a balance due on settlement, *Prest* v. *Mercereau,* 4 *Halst.* 268 ; nor is it evidence of the contents of a bond, note, receipt, or special agreement entered therein, *Wilson* v. *Wilson,* 1 *Halst.* 95 ; nor of a sum due on contract, *Danser* v. *Boyle,* 1 *Har.* 395 ; nor is a charge wanting in particularity, such as " to sundries," &c., admissible, 2 *Penn.* 847, 903, 550, 976 ; 3 *Halst.* 139.

But the question, what the precise rule is relative to the admissibility in evidence of book entries of *money transactions,* does not seem to have been fully settled. Mr. Justice Ford, in delivering his opinion in the case of *Wilson* v. *Wilson,* in 1822, 1 *Halst.* 95, says, " the great principle that book entries *for*

*cash* are not legal evidence, has often been decided, and about thirty years ago this very point received a solemn determination in this court upon writ of error to the Common Pleas of Essex." But in the first case, in point of date, which is regularly reported, that of *Craven* v. *Shaird*, 2 *Halst.* 345, where the question was as to the admissibility of a book to prove various items of an account, of which the principal one was for *money lent*, the book having been admitted below, and judgment for the plaintiff, Boudinot, J., said, " a man's own books are not evidence of money lent, not being in the usual course of business : Kirkpatrick, J., said, " the rule is, that shop books are evidence in the course of business, but not of money lent : " but Kinsey, C. J., said, " when a book contains various charges, though some of the items are for money lent, it is usual to suffer it to go to the jury." And it would seem that the court subsequently adopted this opinion, for the judgment was finally *affirmed*. The next case in which this question came before the court was that of *Wilson* v. *Wilson*, 1 *Halst.* 95 ; and there the charges were not only for cash, but they were written on one of the last leaves of the book, entirely separate from the regular daily entries contained in it. In this case the judges differed in opinion. Ford, J., delivered a decided opinion against the admission of books of account to prove any description of cash charges : he insisted that " such entries are not to be received as evidence of the fact, because they cannot come under the rule of articles sold, work or services done, or materials furnished. These naked transactions in money (he said) have ever been conducted, not in books, but by bonds, bills, mortgages, notes, or receipts, excepting some petty and irregular insurances, deserving no weight whatever against the rule." Kirkpatrick, C. J., differed : he concurred in granting a new trial, on the ground that the admission of the book was error, " not because the charges were for cash, but because they were no part of the plaintiff's book of accounts." And Rossell, J., differing from both his brethren, was against a new trial. These two cases, though not very decided authorities, go rather to favor the legality of cash entries as evidence. But the next, and last reported case on the

subject, is, as far as it goes, clearly the other way. It is the case of *Carman* v. *Dunham*, 6 *Halst.* 189. True the precise point decided in this case was, that "a book of account exhibiting no mutual course of dealing between the parties, nor even a succession of charges by the one against the other, but containing a single entry or charge of cash lent," is incompetent evidence to sustain a demand for money lent and advanced; but the Chief Justice, who delivered the opinion of the whole court, intimated that the argument of Mr. Justice Ford, in *Wilson* v. *Wilson*, against the admissibility of book entries to prove the borrowing or lending of money, was very satisfactory.

In the state of Maine, the books of a party, accompanied by his oath that the charges are correct, are admitted to prove cash charges to the amount of forty shillings only. *Dunn* v. *Whitney*, 1 *Fairfield* 9. And the same rule is adopted in Massachusetts, *Burns* v. *Fay*, 14 *Pickering* 8; and see 3 *Pickering* 109; 2 *Mass. Rep.* (*Rand's ed.*) 222, *note* (*e.*) In *Prince* v. *Smith*, 4 *Mass.* 455, the court said that no book could ever be evidence to prove cash charges paid to third persons by order, or of rent.

In New York, it has been held that the usage, which had grown up in that state, of allowing tradesmen's books to be admitted as evidence in favor of the party making them, could never apply to a charge of cash lent, (the case before the court) but only to the regular entries of the party in the usual course of his business. *Case* v. *Potter*, 8 *Johns.* 211, and in *Vosburgh* v. *Thayer*, 12 *Johns.* 461, the court said, books of account are not evidence of money lent, because such matters are not in the usual course of business matters of book account.

In Pennsylvania, it has been decided that books of account are not evidence of the payment of money; that there is no necessity for it; that it is the business of a man who pays money to take a receipt. *Juniata Bank* v. *Brown*, 5 *Serg. & Rawle* 231. Nor are they evidence of the casual sale of an article not in the course of the party's business. *Shoemaker* v. *Kellogg*, 11 *Penn. State Rep.* 310.

The case now before the court is not as to the admissibility of a book to prove a charge of cash *lent,* or a *single* entry for cash paid, or a number of charges on a *separate* page of the book, or of·cash paid to a *third* person, or for *rent;* but here is a series of charges entered from time to time in regular order, and intermingled with other charges against various persons. They purport to be regular entries made by Inslee, in the course of his business, against Prall, on account of a note of hand held by Prall against him; though it does not appear, by these books, that during this time there were any other dealings between the parties, all the charges against Prall being charges of cash paid. And this is the only peculiar feature which distinguishes it from the broad question, whether book entries of money transactions are evidence to go to a jury or not, a distinction, I apprehend, with very little essential difference in principle.

Regarding the conflicting and variant opinions heretofore expressed by former justices of this court in reference to this question, in several of the cases cited, as leaving it in doubt what the rule really is at this day, we must endeavor to solve the question by a resort to first principles.

It is admitted that at common law a party was not allowed to avail himself of any description of evidence made by himself. Entries in a party's own books, made by himself or by his authority, in the absence and without the consent of him against whom they were made, could never be worth more than the bare assertion in writing of the party making them, as to their truth; and to give such entries the weight of evidence, though utterly unsupported by particular proof of the charge, sound reason seems to require that one of two things should .appear, to wit, either that all business men who keep books are honest, or that such a rule is absolutely necessary in the nature of things. The consideration of necessity introduced the rule in reference to the admission of books of account in evidence. But what was that necessity which furnished the reason of the rule? It was that, in the daily transactions of such business. men as merchants, shopkeepers, mechanics, and tradesmen, *credit* had constantly to be given to·

those with whom they dealt for goods sold and delivered, for articles made, repaired, and furnished, for services rendered day by day, and that it was practically impossible that these transactions could be all remembered, or memorandums in writing taken by the parties, or competent evidence of the facts preserved and produced in cases of dispute. Book entries of such transactions were allowed to take the place of what the law had always deemed competent evidence, because it was the only way in which, as a general thing, any proof could be made. This, though not a very satisfactory, was considered a sufficient reason. It was open to objection that it might be made the means of fraud : it sometimes doubtless is so. But then, the rule established, it operated to admonish the community to be careful with whom they dealt, and the very nature of the dealings afforded some opportunity for parties charged even to prove a negative, to show they had *not* received the article or the service for which the claim was made. The necessity for the rule had this extent—no more : and where the reason of the rule ceased, the rule itself should find its just and proper limit.

I hold, first, that there is not, and never was, a *necessity* for making books of entry evidence of the payment or the lending of money. There is no such great and overruling amount of inconvenience in requiring that men should take a receipt for money when they pay it, or a note or memorandum for money when they lend it, as that the safe, sound principle of legal evidence should be overturned on account of it. It is the ordinary mode in which all careful, prudent men transact such business ; and if some men will persist in being careless or imprudent, the rules of law should not be subverted to encourage it or help it.

I hold, in the second place, that to permit a man to make his neighbor liable for money paid or lent, by the mere act of writing in his private book of account that he paid or lent it, is in the last degree unsafe, hazardous, and dangerous. It is the easiest thing possible to make such a charge—the hardest thing possible to disprove it. Goods are generally bought and sold in a store, in a shop, often by clerks, frequently in the

presence of a third party; they are taken mostly to a man's family, and used there. Services are very generally rendered in public, or there are circumstances which afford some possibility of rebutting fraudulent charges respecting them. But not so with money transactions—they occur at a man's home, in the streets and highways, not in the presence of third parties, perhaps more frequently in private than in public. It can always be safely *alleged* that they so occurred. You may trace goods to their use sometimes, but not money with any certainty. Services generally produce something tangible or visible with which the service was connected, but no man can prove that at a particular time he did not receive money, unless he prove an *alibi.*

The object of the evidence ruled out in this case was to prove the payment of a note, not by endorsements, not by loose receipts, not by witnesses present, not by the acknowledgment of the holder, but by entries of cash paid on account of it, made by the payor from time to time in his private book of accounts. I do not say that these entries were fraudulent; but I do say that a man may very easily pay off his notes and outstanding obligations in this way, if such entries are competent evidence.

We are all clearly of opinion that the ruling at the circuit was right, and that the judgment must be affirmed.

Judgment affirmed.

