EBENEZER KNIGHT, Respondent, *v.* TAMAR CUNNINGTON AND ANOTHER, Administrators, etc., Appellants.

*Entries in books of physician — when books admissible in evidence.*

In an action, brought by a physician against the personal representatives of a deceased person, to recover for professional services rendered to the deceased, the diary in which he enters his visits is not admissible in evidence, unless he first proves, that the entries were made by him, that he keeps correct books, and that other debtors have settled with him on the strength of the entries therein contained.

*Clarke* v. *Smith* (46 Barb., 30) disapproved.

*Quære*, whether, under section 399 of the Code, a physician can, in such a case, himself prove the correctness of his books, or make any statement in regard to them, as against the representatives of a person deceased.

The limit of a cross-examination is in the discretion of the court, and a re-cross-examination on the same subject is purely discretionary, and is the subject of exception only when such discretion is abused.

APPEAL from a judgment in favor of the plaintiff, entered on the report of a referee, in an action brought to recover for services rendered by plaintiff, a physician, in attending defendants' intestate.

*Amos G. Hull,* for the appellants.

*E. C. Ripley,* for the respondent.

BRADY, J. :

The plaintiff commenced this action to enforce a claim for services rendered, as a physician, to the defendants' intestate. The

demand was contested, and the testimony taken by the referee is conflicting in some respects, but, unless some error of law was committed by the referee, the judgment cannot be disturbed. Upon the evidence *admitted* there can be no well founded doubt that the visits and examinations for which charges are presented, were made by the plaintiff, and at the request of the intestate, who lingered for some time in a precarious state of health, and wished the attendance of his physician, although his recovery seemed to be impossible, and, doubtless, in the hope that some change in his condition would produce favorable results if his medical attendant were advised of it at once. It does not necessarily make a physician's bill objectionable, that it contains items of visits after the patient has passed beyond human skill. He may relieve when he cannot cure, and if he may not do either by application, prescription or suggestion, his presence may be a source of comfort, or give pleasure to the patient, who alone is to be consulted and cared for. It may be that comparatively large bills are made up in this way, but that is a matter which injuriously affects the estate only. The physician would be the subject of just censure if he refused to attend his patient when requested, upon the ground that he could do him no good. If, therefore, there be satisfactory evidence of visits by the plaintiff to the intestate, and of the stethoscopic examinations made by him, he should be paid for them whatever would be a fair compensation. The first exception which it is well, though it may not be necessary, to examine, arose in this way : The defendants proved, on the cross-examination of Dr. Neal , a payment of ten dollars to the plaintiff at one of his visits, and what was said by the intestate at the time of the payment. Upon a re-cross-examination, the defendants sought again to obtain from the witness a statement of all that was said on that occasion, and it was objected to on several grounds, one of which was that the witness had already been interrogated upon the subject, and the objection was sustained. It is well settled that the limits of a cross-examination are within the sound discretion of the court, and that the re-cross-examination of a witness on the same subject is also purely discretionary, and cannot, therefore, be the subject of exception, unless, indeed, it appear that the discretion was abused. The payment referred to was made on the 23d day of August, 1869, and for the visit upon

that day the plaintiff charges, in his bill of items, twenty dollars. The defendants' counsel offered to show, in connection with the re-cross-examination mentioned, that the deceased said to the plaintiff, at the time stated, "that makes us square up to the present time," or words to that effect. This was objected to and excluded, and an exception was taken.

The refusal of the referee to permit a further examination upon the same matter would not subject the judgment to peril, but the offer enlarged the object of the defendants, and it was to show a settlement upon a day named, because, if the intestate said "that makes us square up to the present time," or words to that effect, it would tend much to establish the fact that he had paid for all services which had been previously rendered. The referee was acting in a case against the estate of deceased man, whose representatives were essaying to protect it against what they believed to be an unjust claim, and they were entitled to avail themselves, nay, it was their duty so to do, of all fair advantages connected with the dealings between the plaintiff and their intestate. In this they were to be assisted by a liberal application of the rules of evidence, and when they offered to show, upon a re-cross-examination, an important fact omitted upon the first cross-examination, the witness being still upon the stand, its rejection was an erroneous exercise of discretion, and should not be sustained unless it is apparent that no injury was occasioned. It could be shown, doubtless, in this case, that this ruling could exist without prejudice to the defendants, because it is evident that the whole amount of payments which they claim to have been made, were allowed by the referee on account of the services rendered ; and it may be said further, that, assuming the plaintiff to have been paid up to the twenty-third of August, in full, a deduction could be made of any sum recovered for services anterior to that day, and the judgment affirmed for the balance. The bill of items would enable this court to determine this question, and thus modify the judgment. It will not be necessary, however, to do it on the view entertained of this appeal.

The next exception which it is deemed necessary to consider arises as follows : It appears that the plaintiff kept an original book of entries of his visits, called a physician's diary, which was offered in evidence for the purpose of showing the number of visits which

he had made to the intestate. It was objected to, but it was nevertheless received, and the defendants duly excepted. The plaintiff insists that the book was properly admitted, and particularly upon the decision in the case of *Clarke* v. *Smith* (46 Barb., 30), in which Justice INGRAHAM said : "After a physician has proved employment professionally, the entries in his book of the visits have always been received to show the number of visits. It is evidence of nothing else, and for this purpose it has not been considered necessary, as in other cases where books are admitted in evidence, to prove that he keeps correct books, or that others have settled by them." This case seems to stand alone. No other case was cited, and none has been found declarative of a similar doctrine. In two cases (*Foster* v. *Coleman*, 1 E. D. Smith, 85, and *Larue* v. *Rowland*, 7 Barb., 108), the accounts of a physician were proved, and evidence given to show not only that he kept them correctly, but that others settled with him by them, thus bringing them within the case of *Vosburgh* v. *Thayer* (12 Johns., 461). In *Foster* v. *Coleman* the point was taken that the rule only applied to traders and merchants, but the court held it applicable to all persons dealing, the one with another. The account of a physician is generally a detailed statement of the visits he has made, and nothing more. When, therefore, proof is made of the number, it remains only to show what would be a fair compensation for each ; and the account, or diary, therefore, if accepted, establishes, by its authenticity, the most important element; indeed, the very basis of the claim. The rule declared in *Vosburgh* v. *Thayer* was established in this State before the parties were allowed to testify in their own behalf; and when, therefore, the defendant could not be heard personally, in answer to the case which the book of visits or the account made against him. The cases of *Foster* v. *Coleman* and *Larue* v. *Rowland* (*supra*) were decided in 1849, 1850. The right of a party, absolutely, to testify in his own behalf was secured by the amendment to the Code passed in 1857.

The defendant prior to that amendment was, it is true, in a case where the account or a book was admitted against him, precisely in the same position as the defendants are here. He could not be heard personally in answer, as suggested, and the intestate is not here to speak on his own behalf. Nevertheless, the rules of evi-

dence surrounded him with all the safeguards which were deemed essential to his protection, and required the proof of several important matters before the books or account could be admitted as evidence against him. In *Clarke* v. *Smith* (*supra*) the plaintiff was examined on his own behalf, although the action was against the executors of the debtor, and testified that he attended the deceased, and kept books, which were admitted, in which he entered his visits. This evidence was objected to, but received nevertheless. It was held, as we have already seen, by this court, in banc, that the books were properly received in evidence to establish the number of visits ; and it would seem from the opinion rendered, that as to the number of visits the plaintiff's evidence was also correctly admitted. The judgment was reversed, however, because the plaintiff was called to testify as to what took place between him and the deceased in regard to what she had said as to his claims against her, and as to her having his bill and paying him money. What was said about the books may, therefore, be regarded as *obiter*. It certainly was not necessary to the decision of the appeal.

The right of the parties to testify on their own behalf, existed when that case was tried. The question presented on these facts and events is, whether a physician possesses any greater privileges than any merchant, trader, or mechanic. The value of original entries as evidence rests upon the doctrine of necessity ; but the exigency is not more pressing in the case of a physician than of other persons who keep no clerk and who have to rely upon the honesty of their books for success in a court of justice, after proof preliminary which makes them evidence. No reason presents itself for the exception in favor of the physician. The rule which admits the books or accounts is broad enough as it stands, and there is no apparent tendency to enlarge its application exhibited by our courts. "At very best it is but presumptive evidence, and that too of the lowest grade." (Per Harris, J., in *Larue* v. *Rowland, supra*.)

The plaintiff did not comply with the requirements of *Vosburgh* v. *Thayer ;* he did not prove that he kept no clerk, or that his books were accepted by any patient, or that he kept honest books of account, in any other way than by his own statement, which

was only a reiteration of the faithfulness of the book itself. The book contains his statements. Prior to the Code this could not be done, as we have seen; and the law, which allows the testimony of the parties, has not changed the rule when one of them is dead. The survivor cannot testify as to any communication or transaction with the other. (Code, § 399.) Where, therefore, a plaintiff desires to establish his case against a deceased debtor, by resort to his books, he is controlled by the law which existed prior to the Code, and must conform to it. He must establish his employment, if his claim be for services rendered, by competent evidence, and then by proof that he keeps correct books of account and that his debtors have settled with him, finding them to be correct, he may be enabled to put them in evidence. This the plaintiff did not do. For these reasons it is considered that the plaintiff's book was improperly received in evidence. It may be said, also, that the plaintiff's right to prove the correctness of his books himself, or to make any statement with regard to them against a deceased person, is extremely doubtful, even in connection with the case of *Vosburgh* v. *Thayer* and the provisions of the Code. The book, certainly, relates to a communication or transaction with the deceased, and is, as already suggested, the very foundation on which his claim rests. When, however, he proves *aliunde* that he keeps a correct account in the manner suggested in *Vosburgh* v. *Thayer*, it becomes, by virtue of the rule declared in that case, the equivalent of independent testimony, a tribute which the law, pays it on account of an apparent necessity and the honesty of its character. It has not become necessary, however, to examine this question, inasmuch as the defendant did not object to the evidence, because it was prohibited by section 399 of the Code.

The judgment should be reversed and a new trial ordered, with costs to abide event.

DAVIS, P. J., and DANIELS, J., concurred.

Judgment reversed, and new trial ordered, costs to abide event.