(64 App. Div. 163.)

## HODNETT v. GAULT.

(Supreme Court, Appellate Division, Fourth Department. July 23, 1901.)

1. LIMITATION OF ACTION—NEW PROMISE—EVIDENCE.

Where defendant, who was indebted to decedent on open account, after decedent's death wrote to his widow acknowledging a debt, and promising to pay, and it was shown by oral proof that the promise related to the debt on account, action thereon by decedent's administrator was not barred by limitations.

2. SAME—PAYMENTS.

Where defendant was indebted to decedent, and after his death his widow purchased meat of defendant from year to year, on an understanding that the amount should be indorsed as payment on the account, and defendant also made cash payments on the account to the widow, the last of which was made within three years of an action on the account by decedent's administrator, the action was not barred by limitations.

3. EVIDENCE—ACCOUNT BOOKS—ADMISSIBILITY.

Where, in an action on account by an administrator, he furnished a bill of particulars containing an itemized statement, and on trial proved the account books of his decedent, and that he kept no clerk, and gave evidence that he kept honest accounts, sufficient foundation was laid for the admission of the books.

4. SAME—LOST BOOK—SECONDARY EVIDENCE.

Where, in an action on account by an administrator, his decedent's account book was produced, and foundation properly laid, and it appeared that some leaves were missing, but a copy of the entire account made by decedent's children, and which they were prepared to verify, was produced, the book and copy should have been admitted as secondary evidence.

5. SAME—COPY.

The copy was not to be rejected because it contained the entire account, thus duplicating items contained in the original, as the fact that the items were duplicated was apparent on inspection.

Appeal from trial term, Allegany county.

Action by Daniel M. Hodnett, administrator, against John C. Gault. From a judgment in defendant's favor, plaintiff appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

G. S. Van Gorder, for appellant.
M. B. Jewell, for respondent.

SPRING, J.   This action was commenced January 25, 1900, to re-
cover the balance due on an account.   Richard Hodnett was a farm-
er living at Hume, Allegany county, and the defendant was in the
meat business at Olean.   For several years Hodnett sold poultry and
meat on credit to the defendant.   Hodnett died March 28, 1887, and
the plaintiff was appointed his administrator in 1899.   After his
death his widow attempted to collect the balance of the account un-
paid, but received only a small amount of cash from the defendant.
That the defendant is indebted to the plaintiff seems clear from his
own letters.   Before Mr. Hodnett died, but after he ceased selling
him produce, and on the 1st of October, 1886, in a letter from the
defendant to him, the following occurs:

"Dear Sir:  You by your letter speak of making me trouble.  If you do it,
would cause me to quit business.  You must know very well that I am
honest and trying to do the best I can.  I expect to pay you every cent,
and part of it before long, but if I am pushed or sued I cannot do it."

In another letter from the defendant to Mrs. Hodnett, dated March
15, 1889, the defendant says:

"I have no doubt you have been looking for a letter from me for some
time.  I will send some money just as soon as I possibly can.  It is not
my disposition to use you this way; but I am placed in a situation that I
cannot pay at present.  I know you have been good to me, and will be re-
warded, but you must remember that what I owe you is the last of several
thousand dollars' deal that Richard and I had."

In another, under date of December 9, 1889, he wrote to her as
follows:

"I have been disappointed in getting money where I expected it.  Now,
by the 18th or 20th I will do my best to send you some, and I am quite
sure I can.
        "Very respectfully,                                            J. C. Gault."

Again, in July, 1890, he says:

"The R. R. pay comes about the 20th.  I will do my best to send you
something then."

And in a letter which he wrote to the plaintiff dated January 6,
1900, we find:

"I submitted an offer of $75 to Mr. Van Gorder for settlement in full.
The time is not far distant when you will congratulate yourself for except-
ing this offer.  I owe many other debts besides yours, which I expect to
cancel very soon."

These letters show unmistakably an indebtedness existing against
Gault and in favor of Hodnett.   To be sure, the letters were writ-
ten mainly to the widow of the latter, but there is no pretense that
she had sold him anything, and the proof is that the only claim in
which she was interested was the one for produce sold to the de-
fendant by her husband.   She had been personally and by letter en-
deavoring to collect money on this account, and the sales of meat to
apply upon it had mainly been made to her, and it was natural that
the defendant should address his communications to her concerning
the claim of her deceased husband.   The last letter quoted indicates

an indebtedness of at least $75. This was not tendered in compromise of a doubtful claim, and the only reason for the suggested "settlement" was that it was inconvenient for the defendant to meet the debt, not that he was offering to pay more than he owed rather than to be vexed with a lawsuit. Instead of buying peace, he was evidently hoping the plaintiff would accept less than the whole debt, instead of running the hazard of enforcing collection against him.

Aside from a general denial, the only other defense interposed in the answer is that of the statute of limitations. There are two complete answers to this alleged defense: (1) The letters of the defendant acknowledge the existence of the indebtedness, and contain a promise to pay. The character of the claim, if not adequately expressed in the letters, was supplied on the trial by oral proof, which is permissible. Manchester v. Braedner, 107 N. Y. 346, 14 N. E. 405; Fletcher v. Daniels, 52 App. Div. 67, 64 N. Y. Supp. 861. (2) Again, Mrs. Hodnett, after her husband died, purchased meat of the defendant occasionally from year to year. A statement of the amount of each purchase accompanied the delivery of the meat. These purchases were made on the express understanding that the defendant would indorse the amount of them upon the Hodnett account against him. In addition to these sales of the meat, the defendant paid money to her to apply on the account, and the last payment was within three years preceding the commencement of the action, and the sales of the meat ran down to within six years before that event. There was therefore the written acknowledgment, signed by the defendant, which continued the liability (Code Civ. Proc. § 395), and the payments in meat and cash, which operated to keep alive the debt. In no event was the referee justified in dismissing the complaint, as the evidence appeared when the plaintiff rested. The letter of January 6, 1900, was equivalent to the admission of an indebtedness of $75. In addition to this, Mrs. Hodnett testified that on one occasion, when she was endeavoring to induce the defendant to pay something on this account, he then said he knew the debt was "as much as $300 or $400, but I will pay every cent of it."

The action was brought to recover as the balance due $282.48, besides interest, and, to support the precise sum claimed, the books kept by Hodnett were offered in evidence, but excluded by the referee. The plaintiff had furnished a bill of particulars to the defendant containing an itemized statement of the account between them, both debit and credit. The defendant admitted that some of the articles contained in this statement had been delivered to him. The plaintiff proved that the account book of the decedent was in his handwriting, and that he kept no clerk. It appeared also by two witnesses, who had settled with Hodnett from his account book, that he kept honest accounts. A sufficient foundation was therefore laid for the reception of the book in evidence, within Vosburgh v. Thayer, 12 Johns. 461. The evidence showed that the book offered in evidence, and which had been marked "Exhibit S" for identification, and is contained in the record, did not comprise the entire account with the defendant. That was one of the chief objections urged to the admissibility of this account book. A daughter of the plaintiff, and

the plaintiff, who is his son, testified that a few years before they made a correct copy of the entire account in Exhibit S; that the book was then an old one, and well worn, and some of the leaves loose, and since that time two or three of them have disappeared. Both the book of the intestate and the copy made as stated were offered in evidence, but excluded. We think their exclusion was error. The fact that a portion of an entire account book of a party has been lost or destroyed does not preclude the admission of secondary evidence in lieu of the original. If a copy has been made, and its correctness properly verified, it can be received in evidence the same as the copy of any other paper which cannot be produced, but which is competent evidence. The party must produce the best evidence available to him, but an honest claim cannot be defeated because the highest evidence of its validity is not in existence, if other satisfactory proof can be produced. In this case the two witnesses had made an accurate copy of the whole account between their father and the defendant from the book of the decedent. The defendant had been furnished with this in the bill of particulars. He had not pleaded there were payments for which he had not been given credit.

It is contended that the copy was not admissible because it purported to contain the entire account, a part of which was contained in the original account of the decedent. No harm could result to the defendant, because they are in effect, as to this portion of the account, duplicates, as they are readily separable upon inspection. The case of Peck v. Valentine, 94 N. Y. 569, does not militate against the admissibility of this copy. In that case the original memorandum, which was lost, was not admissible, and that is the distinction between that case and the present one. The court is careful in holding that the paper sought to be introduced in evidence was inadmissible to state that the original memorandum "was not original or primary evidence to charge the defendant, * * * nor was it a record of transactions in the ordinary course of business as books of account." The judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event.

Judgment reversed, and new trial ordered, with costs to the appellant to abide the event. All concur.