## VOSBURGH *against* THAYER.

IN ERROR, on *certiorari* to a justice's court.

*Thayer* sued *Vosburgh*, in the court below, for butcher's meat furnished by him to *Vosburgh* and his family. It was proved, by several witnesses, that he had been in the daily practice of supplying them with meat during the period for which he claimed payment. It was proved, by some of those who had dealt with him, that he kept just and honest accounts. He then offered his books of account in evidence, it appearing that he had no clerk. The books were objected to, but admitted in evidence.

*Per Curiam.* The only point for our consideration is, whether the evidence in support of the plaintiff's demand, in the

NEW-YORK,
Oct. 1815.

VOSBURGH
v.
THAYER.

court below, was admissible. In *Case* v. *Potter*, (8 *Johns. Rep.* 212.,) the question, how far the books of account of a party were evidence, incidentally came under consideration ; but, as there was sufficient proof, in that case, to sustain the verdict, without the books, there was no direct decision on the point.

Cases are there cited, showing that, by the *English* law, tradesmen's books are not legal evidence in favour of the party making the entries ; and we intimated that such proof is tolerated here, from the usage which has crept in, and the difficulty of giving proof, in many cases, of a sale and delivery in the usual course of business.

In a case like the present, it is believed, that the usage and the necessity of admitting such proof, has been so long sanctioned and felt in our courts of justice, that it is now too late to question the admissibility of it. The admission of books of account in evidence, under proper limitations and restrictions, is not calculated to excite alarm, or to produce injurious consequences. They are not evidence of money lent. This was so held in *Case* v. *Potter*, because such transactions are not, in the usual course of business, matter of book account. They are not evidence in the case of a single charge, because there exists, in such case, no regular dealing between the parties. They ought not to be admitted where there are several charges, unless a foundation is first laid for their admission, by proving that the party had no clerk, that some of the articles charged have been delivered, that the books produced are the account books of the party, and that he keeps fair and honest accounts, and this by those who have dealt and settled with him. Under these restrictions, from the necessity of the case, and the consideration that the party debited, is shown to have reposed confidence, by dealing with and being entrusted by the other party, they are evidence for the consideration of a jury. Testing the proceeding in this case by these rules, there is no ground for reversing the judgment.

PLATT, J., dissented : 1. The admission of the account book of a party, wherein a charge is entered by himself, to prove the truth of such charge, without any other evidence of the particular item so charged, would be an innovation on the established rules of evidence, as adopted by us from the *English* common law.

In *assumpsit*, for a tailor's bill, (*Pitman* v. *Maddox*, 2 *Salk.* 690.,) *Holt*, Ch. J., allowed a shop book as evidence, it being proved that the clerk who made the entries was dead, and that those entries were in his handwriting. He said it was as good evidence as the proof of a witness's handwriting to an obligation; but he held that such shop book is not, of itself, evidence for the party in whose favour the entries were made.

So, in the case of *Price* v. *Torrington*, (1 *Salk.* 285.,) the same rule was maintained. (See, also, *Lewis* v. *Norton*, 1 *Wash.* 76.)

In the case of *Potter* y. *Case*, (8 *Johns. Rep.* 211.,) the same doctrine was sanctioned in this court.

The rules of evidence are part of the common law; and in varying those rules, the legitimate power of the court extends no further than to decide, that, from the varying condition or habits of society, or other causes, the reason and foundation of the former rule have ceased, or varied; and, therefore, the old rule must be modified, or a new rule substituted. To exercise a larger power, would be a usurpation of legislative authority.

I can perceive no such change in the reason of the rule now in question. On the contrary, if there remains any point of similitude between our community and that country from whence we derive this rule; if we now possess any characteristic habits in common with *Englishmen;* they are to be seen in our commercial transactions, and in the dealings between tradesmen and their customers.

In some countries, (and particularly in the *New-England* states,) the account book is evidence for the party who makes it; but, I believe, wherever this practice prevails, it is inseparably connected with another rule, which is, that the charges in the account shall be *sworn to* by the party claiming the benefit of such charges.

In the case of *Cogswell* v. *Dolliver*, (2 *Mass. Rep.* 217.,) it was ruled, that shop books, verified by the oath of the party, may be given in evidence to a jury. *Sedgwick*, J., there said, "It is to be lamented that it is necessary, in this country, to resort to evidence of this kind, as it opens a door, and furnishes a temptation, to much mischief. Where a book is offered in evidence, it ought to appear suited to aid the oath of the party, which it is brought to fortify and confirm."

So, it appears, that the *principal* evidence there, consists in the oath *of the party;* and that the account book is merely *auxiliary,* in corroboration of the oath.

And, according to *Pothier,* part iv. art. 2. sect. 4. (*Evans's* translation, 483.) by the law of *France,* a tradesman's books " make a *semi-proof,* and the judges often decide in favour of the demands of tradesmen, by admitting their oath as supplying the defect of proof arising from their books."

In "*Swift's System of the Laws of Connecticut,*" &c. (page 172.) he says, " To admit the books of the parties, without proof to evidence them, would produce the greatest injustice. To require proof of every article, would require an impossibility. To allow the proof of *part of the articles charged to support the delivery of the whole,* would open the door to the greatest frauds. It is best, therefore, to let the parties in to testify," &c.

In the case of *Poultney, and others,* v. *Ross,* (1 *Dallas,* 238.) *Shippen, President,* in delivering the opinion, of the court, said, " Though, in *England,* the shop book of a tradesman is not evidence of a debt, without the assistant oath of the clerk who made the entry, yet here, from the necessity of the case, as business is often carried on by the principal, and many of our tradesmen do not keep clerks, the book, *proved by the oath of the plaintiff himself,* has always been admitted." So, also, in *Sterritt* v. *Bull,* (1 *Binney,* 234.)

By our law, the party is not allowed to swear, in confirmation of his accounts. Shall we, then, adopt *part of the new rule,* in admitting the account book as evidence, *without the qualification,* (the suppletory oath,) which, in other countries, has been thought *indispensable,* in order to make that rule *tolerable?*

I hope we shall never allow parties to swear to their accounts, in our courts of law.

To permit a party to support his account by his own oath, affords, in my judgment, but little security against false accounts; for the man whose conscience would permit him, deliberately, to make a false charge against his neighbour, would seldom hesitate to swear to it.

Nor would I permit a party to defeat a charge against himself, by denying it upon oath; because it would be to discourage fraud in some men, by tempting others to commit perjury.

Besides, we have adopted the *English* common law as a part of our state constitution, subject only to legislative alteration; and that common law is, therefore, more strictly obligatory upon us, than upon our sister states. In adopting a new rule of evidence, in this case, we make the law, instead of expounding it.

*We* have no right to adopt the *French* law, and the *civil law*, in preference to the *English* rule; as the courts of *Massachusetts, Connecticut,* and *Pennsylvania,* seem to have done. Sir *William Blackstone,* however, insists that the civil law was conformable to the *English* rule; and that other nations have " distorted it." (3 *Bl. Com.* 368.)

2. The new rule now attempted to be introduced, is impolitic and unsafe; inasmuch as no human prudence or foresight can guard against the fraudulent claims of tradesmen, who, by acts of their own mere volition, are permitted to subject a person to the payment of money, on no other additional evidence, than that such person has, on some former occasion, dealt with them on credit; that they do not choose to keep clerks; and that they can produce witnesses to swear, that such tradesmen, in their dealings, have never cheated them. On such proof alone, to compel the opposite party to disprove the charge, or to pay it, would, in my judgment, be an unreasonable hardship.

No *necessity* exists for such an alteration of the rule, inasmuch as the tradesman always has it in his power to protect himself, by refusing credit; by keeping a clerk, or servants; by calling witnesses, or taking receipts for articles furnished. That a detailed account has been delivered to the party charged, and that he assented to it, or acquiesced without objection, is sufficient proof of the account, *prima facie;* and there is in practice, generally, very little difficulty in adjusting the balance of a fair account, before suit brought.

That we and our ancestors, for ages, have lived and enjoyed security, under the old rule, is palpable evidence that *no necessity* demands an alteration. *Necessity* is a dangerous word.

3dly. The rule, as now proposed to be modified, is very *complicated,* and difficult in its application; and, therefore, extremely liable to be misapplied and perverted, especially in justices' courts, where, according to the established rules in regard to setting aside verdicts, infinite frauds and oppression

NEW-YORK,
Oct. 1815.

may be screened, by the latitudinary powers of juries in the application of such a complex rule. The case would seldom, indeed, occur, where this court could, on justifiable grounds, control the verdict of a jury upon the point now under consideration. I think, therefore, the judgment of the court below ought to be reversed.

(a) Vide Thomas & Foster v. Sinkler, (1 Bay's Rep. 40.) Linch v. M'Hugo, (Id. 33.) Spencer v. Sanders, (Id. 119); Tunno v. Rogers, (Id. 480.) Slade v. Teasdale, (2 Bay's Rep. 172,) Lamb v. Hart, (Id. 362.) Tomlins and others v. How, (1 Wash. Rep. 190—191.)