Conklin agt. Stamler.

---

## NEW–YORK COMMON PLEAS.

### RICHARD B. CONKLIN agt. JAMES A. STAMLER.

A party's books of account, accompanied by the ordinary preliminary proof, can no longer be received in this state as sufficient evidence of the sale and delivery of goods, or of the performance of services, but the party must now go upon the stand as a witness and prove the facts, resorting to the entries made by him in his books, only where it is necessary to refresh his recollection.

The books, however, would be sufficient evidence, within the principle recognized in *Merrill* agt. *Ithaca and Owego Railroad Co.* (16 *Wend.* 586), in cases where the party who made the entries has entirely forgotten the facts which he recorded, but can swear that he would not have entered them if he had not known them at the time to be true, and that he believes them to be correct.

Origin in this state of the practice of allowing the party's books to be received in evidence, to prove the performance of services and the sale and delivery of goods, examined, and the reasons upon which it rested shown to be no longer applicable.

*New-York General Term, June,* 1859.

DALY, *First Judge;* BRADY *and* HILTON, *Judges.*

THIS was an appeal from a judgment rendered in one of the justices' courts of the city of New-York. The plaintiff proved that he had no clerk, that persons who had dealt with him had settled by his books and found them to be correct. He

then offered his books in evidence without showing that any one of the items charged had been received by the defendant, and the justice gave him judgment for the amount of the account as it appeared upon his books.

By the court—DALY, First Judge. In *Morrill* agt. *Whitehead* (4 *E. D. Smith*, 239), it was proved that the books produced were the account books of the party; that he had no clerk, and that he kept fair and honest accounts; but, as there was no proof that any one of the services entered in the book had been actually rendered, we reversed the judgment. This is the first case in this state that has gone, I think, that length, or in which it was distinctly determined that some of the articles or services charged in the account must be shown to have been actually delivered or rendered; though it has been frequently intimated that that proof was essential before the books could be received or used in evidence. (*Vosburgh* agt. *Thayer*, 12 *Johns.* 461; *Sickles* agt. *Mathew*, 20 *Wend.* 76; *Foster* agt. *Coleman*, 1 *E. D. Smith*, 86.) The decision in *Morrill* agt. *Whitehead* is decisive of the present case, as the only proof before the justice here was that the plaintiff had no clerk, and that persons who had dealt with him and had settled by his books had found them to be correct.

But even if this proof had been supplied, I am of opinion that it would not now be sufficient to authorize a judgment. The practice of allowing the party's books of accounts to be received as sufficient evidence of the existence of the debt, which was contrary to the English rule (3 *Bl. Com.* 368; *Marriage* agt. *Lawrence*, 3 *B. & Ald.* 142), came into use in this state and in New-Jersey with the early Dutch colonists, in whose courts merchants and traders were always allowed to exhibit their books of accounts, where it was acknowledged or proved that there had been a dealing between the parties, provided the books had been regularly kept with the proper distinction of persons, things, year, month and day. Full faith and credit were then given to them, especially where they were strengthened by the oath of the party, or where the cred-

itor was dead. (See account of the Dutch tribunals of New-York in *Introduction to* 1 *E. D. Smith's R.*) * * * and the practice, long established in the eastern states, of receiving such books as evidence, is presumed to have been introduced by the English colonists from Holland, who settled New-England. (*Per* BRAINARD, *J., in Beach* agt. *Mills*, 5 *Conn. R.* 496.)

In the Dutch colonial courts, the parties appeared before the court and made their own statement, and if they differed as to a fact which the court thought material, either party might be put to his oath, so that the objection made to this species of evidence was, in these tribunals, of less force, as the party who made the entries could be interrogated in respect to the truth or correctness of each item. In New-England, they very wisely retained the feature of the suppletory oath of the party substantiating the truth of the entries in connection with the practice of allowing such books as evidence; and where the matter is not regulated by statute, as in Maine and Rhode Island, long usage has established that the books of account must be supported by the oath of the party. (3 *Griffith's Law Reg.* 1005; *id.* 116; 3 *U. S. Law Intelligence*, 227.)

In *Case* agt. *Potter* (8 *Johns.* 211), the practice of allowing the entries of the parties, made in the usual course of business, to be received as evidence, was recognized as a usage established in the courts of this state. It was declared to be contrary to the course of the common law—a circumstance that greatly embarrassed the court, finding, as they expressed it, that the usage had crept in, and that it was difficult or impossible in many cases to give proof of a sale and delivery. They adverted to the custom in other countries of requiring, in respect to such evidence, the suppletory oath of the party to give it full effect, but declared that they had no authority to require or admit the oath of the party, and, instead of doing one thing or the other, either repudiating the practice as contrary to the common law, or else holding that it had been the law from the early settlement of the colony, and was therefore

either within or not affected by the provision of the constitution retaining such parts of the common law as formed the law of the colony before the battle of Lexington, they simply said that if this mode of proof was to be tolerated, the party's books could not be used to prove charges for cash lent. This was leaving the whole question unsettled, and consequently it speedily came before the supreme court again in *Vosburgh* agt. *Thayer* (12 *Johns*. 465), when the court divided. PLATT, J., delivered a long opinion, declaring that it was repugnant to the common law. He condemned the court of New-England and the state of Pennsylvania for adopting a rule of the civil law instead of the English rule ; declared that by our law a party could not be allowed to swear to his accounts ; that the rule, even with that qualification or condition, would be no security against false accounts, and predicted that the recognition of such a practice, upon the plea of necessity, would be followed by most mischievous consequences.

But the other members of the court, in an opinion *per curiam*, thought that the usage and the necessity of admitting such proof had been too long sanctioned and felt in our courts, and that it was then too late to question its admissibility ; but instead of simply recognizing the practice as it had prevailed in the Dutch tribunals, and declaring that the party should or could be examined under oath as to the truth or correctness of the entries made by him, they devised, as a test and safeguard, the special preliminary proof which has since been required as a condition precedent to the admission of the books, influenced, no doubt, by what was said by the whole court in the former case, and what was strangely insisted upon by Judge PLATT in his dissenting opinion, that they had no authority to require and could not admit a party to be sworn as a witness.

The examination of these cases will show that the court had no very clear conception of the nature of the question before them, which was simply whether this practice was the law of the colony before the revolution ; for if, by long usage and general adoption, it had, before that event, become the recog-

nized mode of proving facts in certain cases, then it was the
law of the colony instead of the opposite English rule, which,
being repugnant, was not in force at the breaking out of the
revolution, and was consequently not embraced in the retain-
ing clause of the constitution. If they had known—which
they probably did not know—that the rule which they found
in use had existed from the time of the Dutch, and had been
in practical operation for more than one hundred years, they
would have found an easy solution of the difficulty by simply
declaring, as the New-England courts had done, that it had
been in use from the earliest period of the colony, and had
thus grown into a common law by general acquiescence and
long established usage. This conclusion would have relieved
them from all difficulty in respect to the feature by which the
supplementary oath or examination of the party as to the truth
of entries might be required; for, as it formed just as much a
part of this course of procedure as any other, and rested upon
the same general authority—long settled usage—they had
nothing to do but to recognize the whole.

But instead of doing this, they looked into the English books
and found that Lord HOLT had said twice, at *nisi prius* (*Pit-
man* agt. *Madox, Holt,* 298 ; *and Price* agt. *Earl of Torrington,*
1 *Salk.* 285), that a tradesman's shop book was not of itself
evidence, without something more, and they undertook to
supply what that "something more" should be. It was the
rule of the common law that the party to the record could not
be a witness, and BLACKSTONE had declared (3 *Com.* 368) that
the practice abroad of allowing a merchant's book with his
suppletory oath to amount at all times to full proof, was a dis-
tortion of the civil law, in which it may be remarked he was
mistaken ; for to make the books sufficient evidence, in coun-
tries where the civil law prevails, something more than the
suppletory oath of the party is requisite. (*Domat, part* 1, *b.* 3,
§ 2, *art.* 9 ; *Meyer's Institutiones Judiciaries, l.* 14, *p.* 387 ; *Cod.*
4, 19, 5, 7 ; *Code Civil,* 1, 3, 73, § 5, *art.* 1267.) The judges,
no doubt, concluded from the rule of the common law, and
from BLACKSTONE's interpretation of the civil law, that the

oath or examination of the party in substantiation of the entries could not be allowed. But feeling the imperative necessity of permitting in certain cases the books, when kept by the party, to be used as instruments of evidence, or rather the injustice and absurdity of not allowing them to be taken into consideration at all, they evidently thought that the usage which they found existing might be recognized, and the requirement of Lord HOLT satisfied by the preliminary proofs which they devised and required as a condition precedent to giving the books in evidence. New-Jersey and Georgia appear to be the only states that have in this respect imitated the example of New-York. In fourteen of the states, either by statute or by the recognition of the courts, the oath of the party is required in corroboration of the entries, while in five of the states the books are not allowed to be given in evidence at all. (*Nelly* agt. *Holmes*, 3 *Ala.* 642 ; *De Camp* agt. *Vandegroft*, 4 *Black.* 722 ; and cases collected in note 201 ; 3 *Cowen & Hill's Notes to Phillips' Ev.* 3 ed. 297 ; and in note to 1 *Greenleaf's Ev. s.* 117.)

But the important change recently made in the law of this state, by which a party may testify the same as any other witness, has obviated the difficulty that was supposed to exist when the rule above referred to was adopted, and there is now no occasion for resorting to the books unless it may be to refresh the party's memory as to the items, or in cases where there is a failure of recollection. In the latter case, the books, if they contain the original entries of the transaction, would still, I apprehend, be evidence within the rule recognized in *Merrill* agt. *Ithaca and Owego Railroad Co.* (16 *Wend.* 586), · that is, if the party who made the entries has entirely forgotten the facts which he recorded, but can swear that he would not have entered them if he had not known them at the time to be true, and that he believes them to be correct. But I agree with Judge BRADY, that the books, except in the cases above put, can no longer be received as sufficient evidence of the sale and delivery of goods, or of the performance of services, by · merely proving the preliminary facts which heretofore made them sufficient evidence ; but that the party, if he have

no other means of establishing the facts, must go upon the stand as a witness, resorting to his books only where it is necessary to refresh his memory as to the items, or where, from a failure of recollection, he is compelled to rely upon them alone, and can swear to what is required to warrant their introduction as evidence to be submitted to the tribunal that is to pass upon the facts.