proceedings of the two boards thereon, alleged in the complaint, were not a commencement of its business.

It is not alleged in the complaint that the company did not elect a president within the year, and therefore it must be assumed that it was organized within the year by the election of a president, within section nine of the act.

Upon all the questions raised by the demurrer in this case, my conclusion is, that the defendants must have judgment on the demurrer with costs.

[NEW YORK SPECIAL TERM, July 22, 1859.  *Sutherland*, Justice.]

## TOMLINSON *vs.* BORST.

To render books of account competent evidence, the party must prove that during the period the charges were made, he had no clerk; that some of the articles or work were delivered or performed; that the books are the account books of the party, and that he keeps correct accounts.

The statute allowing parties to be witnesses, has not abrogated the law admitting books of account as evidence, under the rules formerly settled.

Where a plaintiff offers his books of account as evidence in support of his claim, the defendant will not be permitted to prove the general moral character of the plaintiff to be bad, for the purpose of discrediting such books.

APPEAL from a judgment of the Montgomery county court, affirming a judgment of a justice of the peace.  The action was for work, labor, services done, and materials found, as a blacksmith; and for window-glass bought, furnished and put in shop, at the defendant's request.  Answer, denying the complaint.

On the trial, the plaintiff, after proving that he kept no clerk; a delivery of part of the articles; performance of a part of the work; that he kept fair and honest books, by those who had dealt and settled with him; and that certain books produced were his account books; offered the same in evidence, which were objected to, on the ground that they were not evidence, if all the items could be proved by other witnesses;

Tomlinson *v.* Borst.

which objection was overruled, and the defendant excepted. The books were then read in evidence. The plaintiff having rested, the defendant called and had sworn a witness, of whom he inquired what had been the general moral character of the plaintiff, during the period of the account claimed against the defendant. This question was objected to as immaterial, irrelevant and incompetent. The objection was entertained, and the defendant excepted. The defendant then offered to show that the plaintiff now is, and for ten years last past has been, a man of bad moral character. Same objection, ruling and exception. Judgment was rendered for the plaintiff for $12.89 damages, and $5 costs.

*T. R. Horton,* for the plaintiff.

*R. H. Cushney,* for the defendant.

*By the Court,* JAMES, J. The counsel for the respective parties agree that there are four questions presented on this appeal for the consideration of the court, viz:

1. Were the plaintiff's books of account properly received in evidence by the court below?

2. Did the justice err in refusing to allow the defendant to prove the general bad moral character of the plaintiff, during the period in which the account charged on the plaintiff's books accrued?

3. Did the evidence sustain the judgment?

4. Was the plaintiff the owner of the account sued on?

The rule under which books of account are competent evidence in this state, was clearly defined in *Vosburgh* v. *Thayer,* (12 *John.* 461,) and has been recognized so often since, that the law should be regarded as settled. It is, that the party must prove that during the period the charges were made he had no clerk; that some of the articles or work charged were delivered or performed; that the books are the account books of the party; and that he keeps correct accounts. This rule

applies to all books of account, whether of the farmer, mechanic, professional man or merchant. (*Linnell* v. *Sutherland,* 11 *Wend.* 568.) The plaintiff's business was of that character which rendered books admissible to prove his account, and the evidence established the preliminary requisites to their admission.

At first books of account were admitted as evidence under the foregoing restrictions, on the presumption that there was no other evidence of the matter, from the necessity of the case; and it is insisted that books should not be admitted as evidence in any case, where proof of the accounts between the parties can be made by common law evidence. That as the law now is, parties being competent witnesses in their own behalf, the necessity for admitting books of account no longer exists, and hence they should be excluded.

I am not aware that in this state books of account have ever been rejected as admissible evidence, simply because the facts sought to be established by them could be proved by other species of evidence. The common practice has been the reverse. We were cited to an incidental remark of the court in *Sickles* v. *Mather,* (20 *Wend.* 75,) as sustaining the appellant's argument. It is this: "Several cases in states where the party's suppletory oath is allowed, exclude books as evidence of transactions where it appears they were in fact known to third persons. Such a precaution would be of very little utility in this state, where the party is not sworn," &c. This was said upon the question whether a person who called himself a foreman was also a clerk, and not upon any question, arising in the case, whether the books should be excluded because their contents could be proved by other evidence. The judge in that case expresses no opinion of his own, or what is the law of this state upon that question, but simply announces what several cases in other states have held, without naming them, and said those cases had no application in this state, as the law then stood.

So we were also cited to the case of *Conklin* v. *Stamler,* a

Tomlinson *v.* Borst.

manuscript case, in the New York common pleas. It is there said, " But the important change recently made in the law of this state, by which a party may testify the same as any other witness, has obviated the difficulty that was supposed to exist, and there is now no occasion for resorting to books, unless it be to refresh the party's memory as to items, or in cases where there is a failure of recollection ; that the books, except in the cases above put, can no longer be received as sufficient evidence of the sale and delivery of goods, or of the performance of services, by merely proving the preliminary facts which heretofore made them sufficient evidence ; that the party, if he have no other means of establishing the facts, must go upon the stand as a witness, resorting to his books only where it is necessary to refresh his memory as to items; or where, from a failure of recollection, he is compelled to rely upon them alone, he can swear to what is required to warrant their introduction as evidence to be submitted to the tribunal that is to pass upon the facts." This excludes books as evidence in every instance where the party can prove the facts by his own oath, and introduces the system of a suppletory oath to make the books admissible in other cases.

If this were entirely a new question now first presented for adjudication, the rule of the New York common pleas would meet my approbation. But the practice of admitting books of account as evidence under the rules adopted by the courts, has become too thoroughly engrafted upon our system of jurisprudence, to justify its being broken up and destroyed by judicial legislation. If done at all, it should be by legislative enactment. The suppletory oath was never adopted in this state, and there is nothing in the statute allowing parties as witnesses in their own behalf which contemplates the exclusion of books of account as evidence where the facts could be proved by the party, or as imposing the suppletory oath before the books would be admissible in cases where the facts could not be proved by the party.

Practically that statute may supersede the use of such books

Tomlinson *v.* Borst.

as evidence, because being regarded as of the weakest and most suspicious kind, no man will be willing to rest his case on such proof, when he can make a better one by his own oath. However that may be, the statute allowing parties to be witnesses has not abrogated the law admitting books of account as evidence under the rules as formerly settled, and to that extent I must dissent from the conclusions of the New York common pleas. In this case the books were properly admitted, and there was no error on that ground.

It is next insisted that the justice erred in not admitting the defendant to prove the general bad moral character of the plaintiff, for the purpose of discrediting his books. No such doctrine has ever yet obtained in this state, to my knowledge, and I trust never will. No cases directly in point were cited by the defendant's counsel, and the offer was unsound upon general principles. A man's general moral character may be bad, and yet the immorality be of such a character as not to affect the honesty and integrity of his dealings; he may be profane, intemperate or licentious. If the party's moral depravity was of a nature that would discredit his books, evidence of it was most certainly admissible. It was said in *Larue* v. *Rowland*, (7 *Barb.* 111,) that "any thing might be proved which would show that the books were unworthy of credit;" and in *Pennington's case*, that "the character of the man who keeps the books, the fairness, or unfairness, of the books from their appearance, the time and manner of making entries, &c. &c., were proper subjects for the due consideration of the jury." I most fully concur in these views. Reference is there had to the business character of the party, and not to his general moral character; to his integrity in deal, honesty in his charges, and the capacity, mode and manner of book-keeping. In this case the evidence of general moral character was properly excluded, and therefore there is no reason for reversal on that ground.

It is next objected that the evidence did not sustain the verdict. How that was this court is unable to determine. The

books were used in evidence, and in their absence the presumption is that they warranted the verdict. They are not contained in the return, and if they failed to prove the accounts, the appellant should have had them before the court.

It was urged that the accounts contained in the books had been assigned in writing by the plaintiff to his son, and that they had never been reassigned. If they had not, this action could not be maintained. (*Code*, § 111.) The son, however, testified to the assignment in writing to himself, and he still had the instrument and had never made any written transfer back to his father. He further testified that he and his father had since made different arrangements; that he had given back all the accounts and all claims upon the books, and that he had not now any claim upon them. If that were so, and it was a question of fact for the justice, such delivery and surrender operated as a parol assignment, and reinvested the plaintiff with title to the accounts.

The rulings of the court below were correct, and the judgment should be affirmed.

[FRANKLIN GENERAL TERM, September 13, 1859. *James, Rosekrans* and *Potter*, Justices.]