By the Court.—Freedman, J.
Upon the trial, the defense of a satisfaction and discharge of the indebtedness sued upon, by Udolpho Wolfe, in his lifetime, was wholly abandoned; for the defendant gave no evidence tending to establish it.
As to the further defense of a satisfaction and discharge of such indebtedness by the plaintiffs, in consideration of the stay of, and the rendition of services by the defendant, in the business to be continued by them, as executors, pursuant to the directions of the testator, there was a clear conflict of testimony, and the question depended entirely upon the relative credibility of the parties. An examination of the whole evidence fails to disclose a tangible ground on which the determination of this branch of the case, which the referee has made, can be disturbed.
The referee allowed to the defendant the sum of sixty dollars, paid by Udolpho Wolfe to Mrs. Lizzie Garland, and erroneously deducted from the amount of commissions earned by the defendant, as claimed in the answer, and also the sum of fifty dollars, received by Nettie Wolfe, as to which the defendant had raised no dispute whatever.
The sum of four hundred and forty-one dollars, being the aggregate amount of sundry bills which the defendant owed to third parties, and which Udolpho Wolfe paid to them for defendant’s account, constituted, under the evidence, which the referee must be deemed to have credited, a proper charge against the defendant.
The claim advanced by the defendant, that Udolpho *267 Wolfe had promised and agreed to contribute, and, in fact, had contributed toward the support of defendant’s mother, was not disputed ; but the evidence was conflicting as to the extent to which Udolpho Wolfe had thus obligated himself. The referee, in allowing to the defendant only six hundred and seventeen dollars on this account, adopted the version of the plaintiffs, in regard to the extent of such obligation ; and, as in the same, they were indirectly corroborated by the fact that the commissions of the defendant were increased on or shortly before January 1, 1866, the finding of the referee, upon this point, is fully sustained by evidence.
The most important question which remains to be noticed, relates to the admissibility of certain books received by the referee in evidence against defendant’s objection and exception. They consisted of the passbooks of the defendant, and of the books relating to the business of the deceased. From the whole case, it is evident that their contents must have exercised a material, if not a controlling influence over the mind of the referee; and unless their admission can be justified, on the ground that they constituted evidence per se of the claim of the plaintiffs, a new trial must be ordered.
As to the pass-books, it appeared that, for the most time, they were in the possession of the defendant; that they contained debit and credit entries, and purported to be a full account between the defendant and Udolpho Wolfe; that, as often as the defendant saw fit, he handed them to the book-keeper of Udolpho Wolfe to write them up; that thereupon the said book-keeper did write them up, by making all necessary entries therein, and did return them to the defendant; and that all the entries therein were made by such bookkeeper, in his capacity as such. These books, therefore, constituted accounts that had been rendered to the defendant, .and as such they were clearly admissible, irrespective of the question whether the entries *268 therein were original entries, or entries transcribed from other books.
The books relating to the business of Udolpho Wolfe, deceased, consisted of a day-book, journal, ledger, cash-book, and blotter. Prior to their admission, William H. Harrison, a witness called on behalf of the plaintiffs, testified, that he had been the bookkeeper of Udolpho Wolfe, in his lifetime, and as such, had the entire charge of the said books; that all the entries made therein were made by himself, in the discharge of his duties as such book-keeper, and in the ordinary course of the business of said Udolpho Wolfe ; and that they were correctly made. He also showed that the cash-book contained, with a few exceptions, the entries of all the amounts with which the defendant had been charged in his pass-books, and in plaintiffs’ bill of particulars, furnished in this action; and that the remaining debits were to be found in some of the other books. The witness further testified, that all these charges were in his handwriting; that they were-made by him, in the ordinary course of his employment ; that they were the original entries; and that they were correct. And finally, the witness testified, that most of the moneys thus charged were paid by him to the defendant, over the counter, either in bills or checks, as directed by Udolpho Wolfe, or his partner, David H. Burke. This testimony was clearly sufficient to admit the said books.
The rule laid down in Vosburgh v. Thayer (12 Johns. 461), and followed in many subsequent cases, upon which the learned counsel for the appellant so confidently relies, to the effect that the books of a party ought not to be admitted, unless a foundation is first laid for their admission, by proof that the party had no clerk; that some of the articles charged have been delivered; that the books produced are the account-books of the party ; and that he keeps fair and honest *269 accounts; and, this by those who have dealt and settled with him, was undoubtedly at one time the settled law of this State. But it applied only to cases in which the plaintiff, though incompetent to testify generally in his own behalf, sought to introduce entries in his own handwriting as evidence in his favor.
In Conklin v. Stamler (2 Hilt. 423), Daly, P. J., showed how this rule originated. He showed that the practice of allowing the party’s books of account to be received as sufficient evidence of the existence of the debt, came into use in this State with the early Dutch colonists, in whose courts merchants and traders were always allowed to exhibit their books of account, where it was acknowledged or proven that there had been a dealing between the parties, provided the books had been regularly kept. The parties appeared before the court, and made their own statements, and, if they differed as to a fact which the court thought material, either party might be put to his oath, and the party who made the entries could be interrogated in respect to the truth or correctness of each item. After the establishment of a State government, the practice of allowing the entries of the parties, made in the usual course of business, to be received as evidence, was recognized as a usage established by the courts of the State. But as it was the rule of the common law of England, that the party to the record could not be a witness, his supplementary oath was rejected ; and, as Lord Holt had said, that a tradesman’s shop-book was not of itself evidence, without something more, the courts undertook to supply what that “something more” should be. They therefore devised and required, as a condition precedent, the preliminary proofs insisted upon in Vosburgh v. Thayer (supra); and this rule remained in force until the passage of thact enabling a party to testify the same as any other witness. This important change obviated the difficulty *270 that was supposed to exist; and the court of common pleas, in the case last cited, thereupon went to the length of holding that there was no longer an occasion for resorting to the books, unless it might be to refresh the party’s memory as to the items, or in cases where there is a failure of recollection: It was therefore held, that the books, except in the cases stated, could no longer be received as sufficient evidence of the sale and delivery of goods, or of the performance of services, upon proof of the preliminary facts which formerly had made them sufficient evidence ; but that the party, if he have no other means of establishing the facts, must, go upon the stand as a witness, and could be allowed to resort to his books only where it was necessary to refresh his memory as to the items, or where, from a failure of recollection, he was compelled to rely upon them alone, and could swear to what was required to warrant their introduction as evidence.
The supreme court, however, would not go to this length ; and in Tomlinson v. Borst (30 Barb. 42),it was held, that there is nothing in the statute allowing parties to be witnesses in their own behalf, which contemplates the exclusion of books of account as evidence, where the fact can be proved by the party, or which imposes the suppletory oath of the party as proof, preliminary to the admission of the books, in cases where the fact can not be proved by the party.
This case has been cited with approbation by the court of appeals, in Stroud v. Tilton (3 Keyes, 139); and the law may now be deemed settled, that the statute authorizing parties to testify in their own behalf has not deprived them of the right to introduce their books of account in evidence. It seems also settled, that the party may supply, if he can, the preliminary proof of the correctness of the books, by his own oath whenever it is made to appear, either that the party had no clerk, or that such clerk is dead. In the last- *271 named case, the admission of plaintiff’s books was upheld, on proof of their general correclness, and of the accuracy of the charges, by plaintiff’s own oath, and on proof of the death of the clerk who had kept the books, although it appeared that the items of the account were noted in the first instance on slates, in the various work-rooms, and that they were subsequently transcribed from day to day on the books.
The examination so far made sufficiently shows that the rule laid down in Vosburgh v. Thayer never applied to books of account regularly kept by a clerk. Entries made by third persons have always stood upon a different footing. To be admissible, such an entry must be one which it was the person’s duty to make, or which belonged to the transaction, as part thereof, or which was its usual and proper concomitant. The person making it must either have had competent knowledge of the fact, or it must have been part of his duty to have known it, and there must have been no particular motive to enter that transaction falsely more than any other, and the entry must have been made at or about the time of the transaction recorded. In such cases, the entry itself is admitted as original evidence, being part of the res gesta. If the person who made the entry is living, and competent to testify, he must be produced (1 Greenl. Ev. § 115; Wilbur v. Selden, 6 Cow. 162 ; Brewster v. Doan, 2 Hill, 537). But if he is called as a witness to the fact, the entry of it is not thereby excluded. It is still an independent and original circumstance, to be weighed with others, whether it goes to corroborate or to impeach the testimony of the witness who made it. If the person who made the entry is dead, or being called, has no recollection of the transaction, but testifies to his uniform practice to make all his entries truly, and at the time of each transaction, and has no doubt of the accuracy of the one in question, the entry is considered sufficient *272 as original- evidence, and not hearsay, to establish the fact in question (1 Greenl. Ev. § 115 ; Bank of Monroe v. Culver, 2 Hill, 531). The admission of the party’s own shop-books, kept by a clerk, stands upon the-game principles whicli have just been considered. The books must have been kept for the purpose, and the entries must have been made contemporaneous with the transactions recorded, and by the person whose-duty it was, for the time being, to make them (1 Greenl. Eo. § 117).
It is clear, therefore, that the fact that the witness Harrison, on cross-examination, admitted a want of personal knowledge as to some items, would not have authorized the exclusion of the books. The entries relating to these items were, nevertheless, made in the course of his professional employment, and he had no-motive to pervert the truth. They were, therefore, admissible on the ground that upon the points covered by them no better evidence was attainable.
But the books of Udolpho Wolfe were admissible npon still another ground. So far as they showed the amount of the commissions to which the defendant was entitled on the sales made by him, and the amount of expenses incurred by and credited to him, they were-admissible on the ground that in this respect they contained entries against the interest of the party who-made them. And in this respect they did, in point of fact, become highly important for the defense.
Nor is there any force in the suggestion that books of account can not be received as evidence of cash payments. It is true that in Case v. Potter (8 Johns. 163),. it was said that, as the demand was for cash lent, the book would have been inadmissible, if objected to at the time. But in that case the party’s own entry had been received as evidence of a single transaction, viz.: a loan of ten dollars; while, in the case at bar, the , books contain a series of entries, debit and credit, made *273 in the usual course of the business between the parties, and extending over a long period of time; and the debit entries do not represent loans, but payments on account, which, in most instances, were also almost immediately noted in defendant’s pass-books. Such entries are admissible, on the ground that they constitute parts of a chain or combination of transactions between the parties. To exclude them, on the ground suggested, would enable the defendant to appropriate to himself the benefit of the credits appearing in his favor upon the same books, while he denies the plaintiffs the benefit of their charges.
There was no error in the reception of the books of Udolpho Wolfe, deceased. True, the defendant had no access to them, and he can not be deemed to have acquiesced in them. But the cash charges, of which he complains, were transferred to the pass-books in his possession; and as he must have known whether or not he had received the amounts charged, he should have objected to such as he deemed an improper charge. There is no evidence that the defendant ever objected to any of the items • with which the referee finally charged him. On the contrary, the evidence points strongly to the conclusion that he acquiesced in them ; and, upon the whole case, it is apparent that substantial justice has been done between the parties.
Several exceptions were taken to the admission and rejection of other evidence, but none of them appear to be tenable.
The judgment should be affirmed, with costs.
Yak Yorst and Speir, JJ., concurred.