Taggart *v.* Fox.

of *Twinam* v. *Swart*, but may be reconciled with it; and that unless it is shown either that the sheriff knew that the property levied upon was exempt from levy and sale under legal process, or a claim of exemption was made by or on behalf of the execution debtor to the sheriff, the sheriff is not a trespasser in levying upon property which upon the trial may be proved to be such, or which if the execution debtor had claimed exemption he would have had a right to have exempted from levy and sale.

CHARLES P. DALY, Ch. J., concurred.

Judgment reversed.

---

DAVID TAGGART, Respondent, *against* DAVID FOX *et al.*,
Appellants.

(Decided June 5th, 1882.)

Upon the trial of an action for work performed and materials furnished, plaintiff offered in evidence his books of account, the charges in which against defendants had been made by plaintiff's wife, in the regular course of business, she acting as his clerk. It appeared that the entries in the books had been made by her in part from small books of plaintiff's workmen, in which they put down and furnished at the end of each day their accounts of work and materials, and in part from memoranda *made on slips by her husband or by herself in his absence,* when goods went out. She testified that she knew the entries to be correct when made. *Held*, that the books were properly admitted as plaintiff's books of original entry, notwithstanding defendants' objections on the ground that they were " mere copies of books in existence."

The admission in evidence of such books without the preliminary proof requisite as a foundation for their introduction, is not cause for granting a new trial, if no objection was made to them at the time on that ground.

The origin and grounds of the rule allowing a party to give his books of account in evidence, explained, and the nature and extent of the preliminary proof required, stated.

APPEAL from a judgment of this court entered upon the report of a referee.

The facts are stated in the opinion.

*J. E. Newburger*, for appellants.

*Fred. M. Littlefield*, for respondent.

CHARLES P. DALY, Chief Justice.—The plaintiff was allowed, under the defendants' exception, to give his day-book and ledger in evidence in proof of the materials furnished to the defendants and the labor performed for them.

It was settled in *Vosburgh* v. *Thayer* (12 Johns. 461) and *Case* v. *Potter* (8 Johns. 211) that to entitle a party to give his books of account in evidence he must prove preliminarily—1st, that he had no clerk; 2d, that the books produced are the account books of the party; 3d, that some of the articles charged have been delivered; and, 4th, that he keeps fair and honest accounts, which must be proved by those who have settled with him; all of which being shown, they are admissible, but not as proof of a single charge or 'of money lent (*Low* v. *Payne*, 4 N. Y. 247; *Corning* v. *Ashley*, 4 Den. 354).

In *Conklin* v. *Stamler* (2 Hilt. 422) I pointed out how the usage arose in this state of allowing tradesmen's books to be given in evidence in proof of the correctness of the charges contained in them, which was contrary to the common law; that it was the practice when New York and a part of New Jersey constituted the Dutch Colony of New Netherlands, to allow merchants and traders to exhibit their books in court when it was admitted that there had been dealing between the parties or that fact was proved, that the books were regularly kept, in the ordinary course of business, and that the articles, or some of them had been delivered. Where this appeared they were admitted in these Dutch Colonial tribunals as evidence of the correctness of the charges contained in them, additional weight being given to the entries if the merchant or trader was dead, or he affirmed the correctness of the book by his oath (Daly's Historical Sketch of the Judicial Tribunals of New

York, from 1623 to 1846, p. 16). This practice was continued after New York and New Jersey became English Colonies; and it was from these Dutch tribunals that it was introduced into the New England States (*Beach* v. *Mills*, 5 Conn. 496).

The question arose in *Case* v. *Potter* (*supra*) whether books of account kept by an intestate could be received as evidence of money lent, which had been admitted upon the trial, not as conclusive nor as sufficient evidence to authorize a recovery, but as evidence which the jury might consider in connection with other circumstances. On the review of the case it was held that the books would have been inadmissible if that objection had been taken on the trial; and the judgment was affirmed, there being other evidence that the loan had been made. Afterwards, in *Vosburgh* v. *Thayer* (*supra*), the point was directly raised, whether a butcher's account book could be received in evidence as proof of delivery of meat by him to the defendant and his family, upon showing that the butcher had no clerk; that he was in the daily practice of supplying meat to customers; and proving by the evidence of those who had dealt with him, that he kept just and honest books of account; in which case the rule, as above stated, and which has since been followed, was laid down. The court was divided upon the question of the admissibility of this evidence, but the majority affirmed the judgment, because the usage, the origin of which was apparently unknown to them, had been so long established that it was then too late to question the admissibility of this kind of evidence, though in conflict with the rule of the common law, and because they were impressed with the difficulty in many cases of proving a sale and delivery in the usual course of business. They recognized that in the New England States. this kind of evidence was allowed if the charges in the account book were sworn to by the party claiming the benefit of such evidence, but held that they had no authority to require, and could not admit, the oath of the party.

In *Conklin* v. *Stamler* (*supra*) I was disposed to think that the reason which led the court to sanction this usage, —the difficulty in proving, in many cases, the sale and delivery of goods by a party in the ordinary course of business, who had no clerk,—was obviated. As parties are now allowed to testify in their own behalf, I thought that the books could now be used by a party so testifying to refresh his recollection, and that there was no further occasion to admit them as distinct and independent evidence. But in *Tomlinson* v. *Borst* (30 Barb. 42), this question was considered on appeal by the General Term of the Fourth District; and it was held that the practice of admitting books of account in evidence, under the rule adopted by the courts, had become too thoroughly engrafted on our system of jurisprudence to be broken up and destroyed, as the court expressed it, by judicial legislation; and, if done at all, that it should be by a legislative enactment; that there was nothing in the statute allowing parties to be witnesses in their own behalf, which contemplates the exclusion of books of account as evidence, where the facts could be proved by the party; and that the statute had not abrogated the law admitting them as evidence under the rules as formerly settled. And in *Stroud* v. *Tilton* (4 Abb. App. Dec. 324), the conclusion arrived at by the General Term of the Fourth District in this case was approved, the Court of Appeals declaring, in the opinion delivered as the opinion of the court, that the statute authorizing parties to testify in their own behalf has not deprived them of the right to introduce their books of account in evidence; and the law as thus interpreted has been followed by the Superior Court in *Burt* v. *Wolf* (38 Super. Ct. 263), the Superior Court, in that case, suggesting that the party can now supply the preliminary proof of the correctness of the books by his own oath, whenever it is made to appear that he has no clerk or that such clerk is dead. I do not understand, however, the decision of the Court of Appeals in *Stroud* v. *Tilton* to have gone that length; for the party proved, in that case, the correctness of his books, by those

who had settled with him, and by his own testimony that they contained his accounts with the defendant; that he believed the entries in them to be correct; that they were in the handwriting of his son, who had been his book-keeper, and was then dead; that the work done was entered each day upon a slate by those doing it, or under whose eye it was done in the shop; that his son—the bookkeeper —entered the charges from day to day in the books and effaced them from the slate; and that the plaintiff believed that the items were correctly and fairly entered as to price, hours and materials; that he knew the details when the charges were made, but could not remember them without the aid of the books. It does not appear that proof was given in that case, as required by the rule, that some of the articles charged had been delivered; but, perhaps, this was inferable from the plaintiff's testimony, that he knew the details when the charges were made by his clerk, and that they were correctly entered.

If, then, as the Court of Appeals holds, the law allowing witnesses to testify in their own behalf has not deprived them of the right to introduce their books of account in evidence, or if, as Judge JAMES expresses it in *Tomlinson v. Borst*, it has not abrogated the law admitting books of account in evidence under the rules as formerly settled, then the rules must be complied with, and the preliminary proof required by them must be given before the books can be received in evidence. It was not given in this case, and if that objection had been made when the daybook and ledger were offered in evidence it would have been error to have admitted them. But the objection was not made to the want of this preliminary proof. The defendant himself, when the plaintiff was testifying, called for the production of the book of original entries, for the purpose of cross-examining the plaintiff in respect to certain materials, the plaintiff being then under a cross-examination; and on the day to which the further hearing was adjourned, the defendant's cross-examination being continued, the plaintiff produced his books of original entries,

Taggart *v.* Fox.

consisting of his daybook and ledger.  The questions put to him by the defendant's attorney are not given in the case, but the continuation of his cross-examination on that day begins as follows: " These are my books (books of original entries).  The entries herein are made by my wife;" and then follows a long statement, evidently elicited by the defendant, of how and from what sources the entries in the books produced, which were his daybook and ledger, were made by his wife, who acted as his clerk.  After a further long cross-examination by defendant in respect to a large number of items, the plaintiff's wife was called by him as a witness, and testified that she kept her husband's books; that she made the entries in the daybook and ledger shown to her; that she made them in the usual course of business, at the time of the transaction set forth, and that the entries in the daybook were correct when made ; that she had personal knowledge of the facts or transactions on which the entries were based, as it was her duty to make the entries belonging to the transaction set forth.  The plaintiff then offered the daybook and ledger in evidence, whereupon the defendant examined her preliminarily, as he had a right to do, as to how the entries were made, and having elicited that they were made from small books, the entries in which were not made by her, and that she copied the small books into the daybook, the defendant objected to the introduction of the daybook and ledger in evidence, upon the ground that they " were copies of books that were in existence." The referee and the plaintiff then examined her, and it appeared from her testimony and from the previous testimony of the plaintiff that the workmen employed had passbooks, in which they put down the work done by them, and which they furnished at the end of each day ; that there were books in which the materials were entered by the plaintiff's wife, as they were furnished and as she received the account of the materials from the workmen, and that it was from these memoranda, consisting of the workmen's pass-books and from slips made by the wife, from little slips, that she made the entries in the daybook, in the regular

course of business, destroying the slips after she had compared them with the men's books. It thus appearing how the entries in the daybook and ledger were made, the referee admitted the book, and the defendant excepted. It is evident from this statement that the objection, and the only one raised by him, was that the daybook and ledger were not admissible as original entries of the transactions recorded in them, but to use his own language, were only "mere copies of books in existence"—*i. e.*, the workmen's books, which he regarded as the original entries, and not the daybook. If the defendant meant to exclude the books upon the ground that a sufficient foundation had not been laid for their introduction, or, to express it differently, that the proper preliminary proof had not been given that entitles a party to give his books in evidence, he should have made that specific objection; and a new trial will not be granted where he omitted to do so, but objected that they were not the account books of the parties, but entries from other books, which were the books that should have been given in evidence (*Cowperthwaite* v. *Sheffield*, 3 N. Y. 247, 248; *Gillett* v. *Campbell*, 1 Den. 522; *Norman* v. *Wells*, 17 Wend. 142, 143; *Willard* v. *Warner*, Id. 259; *Meyers* v. *Avery*, 23 Ind. 510; *Davis* v. *Strohm*, 17 Iowa 421).

The daybook and ledger were the account books of the plaintiff. They were books of original entries, made in the regular course of business by his wife, who acted as his clerk, and who knew that they were correct when made. They were made from the pass-books of the plaintiff's workmen, furnished at the end of each day by them, and from slips and memoranda, in part made by herself when goods went out in her husband's absence, and are to be regarded as original entries; the daybook and ledger being the contemporaneous records kept by the plaintiff's wife of the regular course of his business, and who knew the entries to be correct (*McGoldrich* v. *Traphagen*, 25 Alb. Law Jour. 273; *Sickles* v. *Matthews*, 20 Wend. 75, 76; *Stroud* v. *Tilton*, 4 Abb. App. Dec. 324; *Davison* v. *Powell*, 16 How. Pr. 467; *Burke* v. *Wolf*, 6 Jones & S. 263; *Ingraham* v. *Bocknis*, 9

Serg. & R. 285; *Forsyth* v. *Noveross,* 5 Watts 432). The case of *Gould* v. *Conway* (59 Barb. 355), must be limited to the facts in that case. So far as it holds that there is no rule that allows the books of a party to be given in evidence, that have not been kept by himself, but by a clerk, it is overruled by the decision of the Court of Appeals, in *Me Goldrich* v. *Traphagen* and *Stroud* v. *Tilton* (*supra*), in which the daybook and ledger kept by a clerk, as in the present case, were held to be books of original entries, and admissible as such.

There was no ground for a finding by the referee that the extra work sued for was not authorized by the defendants. On the contrary, the defendant Fox admitted that extra work was ordered by him or by the firm.

The tender of the $100 was not properly pleaded ( *Wilder* v. *Seeley,* 8 Barb. 411; *Cortwright* v. *Kady,* 21 N. Y. 354; *Giles* v. *Harris,* 1 Ld. Ray. 254); and, if it had been, the amount was not paid into court ( *Cortwright* v. *Cady, supra; Becker* v. *Boom,* 61 N. Y. 321).

I fail to see, and the defendant has not pointed out, what relevancy there was in the inquiry as to where the plaintiff purchased three sheets of the zinc, whether at the time he purchased them he purchased other zinc, and whether he purchased zinc at any time in the month of February.

Eleven exceptions were taken to questions put to the witness Cassidy, who gave evidence in rebuttal. I do not understand what bearing these questions had as evidence in rebuttal. Assuming them to be immaterial, the appellant has not pointed out how the answers given to the questions could have affected him injuriously; and I fail to see what possible harm they could have done to him. The exclusion of the question at folio 221 was productive of no injurious effect, as the defendant Fox subsequently admitted that he did order extra work. The question at folio 226 was improper, unless the bill was produced or its loss accounted for. The answer at folio 77 was properly stricken out; it was immaterial.

The report of the referee should be affirmed.

VAN BRUNT and BEACH, JJ., concurred.

Judgment affirmed.