## REXFORD *v.* COMSTOCK.

*(Supreme Court, Special Term, Chenango County.   July, 1888.)*

1. EVIDENCE—DOCUMENTS—BOOK ACCOUNTS.
    Entries of charges for services and disbursements in the account-books of an attorney, in his own handwriting and in that of his former partner, both of whom died before the client, many of the items being proved by disinterested witnesses independently of the books, and other witnesses testifying that they had settled their indebtedness to the attorney by the books, and found them correct, are admissible in an action by the attorney's administrator against the administrator of the deceased client to recover for such services and disbursements, though during part of the time the entries were being made plaintiff's intestate had clerks in his office, whose principal duties were copying papers and other such work as is usually intrusted to clerks in a law-office, and who were not shown to have had personal knowledge of the matters, as they were not such clerks that their employment would render the books incompetent evidence.

2. INTEREST—WHEN ALLOWED—ATTORNEYS' FEES.
    Interest is recoverable, in an action for attorneys' fees, from demand for payment, when their value is undisputed, and on disbursements from the time when made.

On motion for confirmation of referee's report.

Benjamin F. Rexford, administrator, etc., of Benjamin F. Rexford, deceased, presented a claim to Abel Comstock, administrator *d. b. n.* of William G. Guernsey, deceased, for attorney's fees due, and disbursements made by plaintiff's intestate, which was referred under the statute. The referee reported $4,192.24 due the claimant.

*Howard D. Newton,* for plaintiff.     *George W. Ray,* for defendant.

FOLLETT, J.   Plaintiff's intestate died August 30, 1872.   Defendant's intestate died June 24, 1873.   The referee received in evidence the books of account of the plaintiff's intestate against the objection and exception of the defendant.   Books of account are admissible in evidence in favor of the party keeping them, notwithstanding parties to actions are now authorized by statute to testify in their own behalf.   *Tomlinson* v. *Borst,* 30 Barb. 42; *Stroud* v. *Tilton,* *42 N. Y. 139, 4 Abb. Dec 324.   Entries of medical services in books of account regularly kept by a physician are evidence of the rendition and value of the services.   *Foster* v. *Coleman,* 1 E. D. Smith, 85; *Larue* v. *Rowland,* 7 Barb. 107, *Clarke* v. *Smith,* 46 Barb. 30; *Knight* v. *Cunningham,* 6 Hun, 100; *Wetmore* v. *Peck,* 19 Alb. Law. J. 400; *Bay* v. *Cook,* 22 N. J. Law, 343.   Entries of work done, and of materials furnished, in such books, are evidence that the work was done, the materials furnished, and of their value.   *Linnell* v. *Sutherland,* 11 Wend. 569; *McGoldrick* v. *Traphagen,* 88 N. Y. 334; *Mayor* v. *Railroad Co.,* 102 N. Y. 572, 580, 7 N. E. Rep. 905; *Taggart* v. *Fox,* 11 Daly, 159; *The Potomac,* 2 Black, 481; *Morris* v. *Briggs,* 3 Cush. 345; *Holmes* v. *Beal,* 9 Cush. 223.   Entries of legal services, and of disbursements incident thereto, in books of account regularly kept by a lawyer in his business, are within the principle established by the cases cited, and are evidence that the disbursements were made, the services rendered, and of their value.   *Codman* v. *Caldwell,* 31 Me. 560; *Charlton* v. *Lawrey,* Mart. (N. C.) 26.   The weight which is to be given to such evidence depends upon the circumstances surrounding each case, and is to be determined by the tribunal which decides the question of fact.   It has been asserted (*Conklin* v. *Stamler,* 2 Hilt. 422; *Taggart* v. *Fox,* 11 Daly, 160; *Beach* v. *Mills,* 5 Conn. 496) that entries in books of account kept by tradesmen and artisans were not, at common law, admissible in evidence to establish the liability of debtors, but that the rule which declares such entries relevant was introduced into the colonies from Holland.   Such entries may have been deemed relevant by the laws of Holland, and it may be that the courts established in the colonies settled by the Dutch followed the rule; but in 1609 an act was passed in England, (7 James I., c. 12,) which recited that such entries were then received by the courts, and enacted that thereafter such entries should not be received in evidence if made more than a year prior to the beginning of an action for the recovery of the account; and in 1863 this act was "revivified and rendered perpetual" by chapter 125, 26 & 27 Vict.; 1 Tayl. Ev. (6th. Ed.) p. 635, § 641; 1 Whart. Ev. § 678.   The rule that entries in books of account made contemporaneously with the sale of goods are relevant to the issue raised by a denial of the indebtedness originated long before parties were competent to testify in their own behalf, and out of the necessity of resorting to this inferior kind of evidence when parties dealt with each other in small matters, at short intervals of time, and under circumstances which rendered it practically impossible to prove the transactions by third persons.   Parties adopting this mode of dealing may, in the absence of evidence of fraud or error, be deemed to vouch for the integrity of each other's books, and to have assented that their dealings may be established *prima facie* by contemporaneous entries in books of account regularly kept.   Entries so made are a part of the transaction, or of the *res gestæ,* and experience has shown such entries to be so generally correct that, in the absence of discrediting circumstances, they are deemed to be a reliable kind of evidence.

In England entries in bankers' books are, by statute, *prima facie* evidence of the truth of the statements recorded, (Steph. Dig. art. 36;) and the chancery practice amendment act, (15 & 16 Vict. c. 86, § 54,) empowers such courts, "in cases where they shall think fit so to do, to direct that in taking the account the books of account in which the accounts required to be taken had been kept, or any of them, shall be taken as *prima facie* evidence of the truth of the matters therein contained, with liberty to the parties interested to take such objections thereto as they may be advised." In India all entries in books of account regularly kept in the course of business are relevant. India Code Ev. § 34.

*Case* v. *Potter*, 8 Johns. 211, is the first reported case in this state discussing the admissibility in evidence of books of account, but nothing was decided. In the next case, (*Vosburgh* v. *Thayer*, 12 Johns. 461,) it was held that such books ought not to be received in evidence unless it was proved (1) that the party offering them kept no clerk; (2) that some of the articles charged were delivered; (3) that the books offered are the account-books of the party; (4) that the party keeps just accounts; and this by those who have dealt and settled with him. This case is the leading one in this state. None of the above conditions have been regarded as ambiguous, except the first, which has not been adopted, so far as we know, in any jurisdiction except in the state of Georgia, where it has been somewhat modified by statute. Code Ga. § 3700. In England, and in several of the states, it has been held that, if the party offering the books kept a clerk, or an employe who knew about the fact entered, the entry would not be received if the clerk or employe could be produced as a witness. In this state the first condition has been reiterated in several reported cases, two of which are recent. *Ives* v. *Waters*, 30 Hun, 297; *Beatty* v. *Clark*, 44 Hun, 126. But the meaning and extent of the first rule has been considered only in two reported cases. *Sickles* v. *Mather*, 20 Wend. 72, was an action brought by a manufacturer to recover the price of ink manufactured, and sold to defendant. A foreman of plaintiff's factory testified that he had delivered all of the ink manufactured, and remembered delivering ink to the defendant at divers times, but did not remember the years or months when the deliveries were made. He testified that he entered the sales on a slate, which the plaintiff transcribed on his books. The plaintiff kept no clerk, unless the foreman was one, which the defendant asserted he was, within the meaning of the rule; but it was held that he was not, the court saying: "It is said, first, that the plaintiff had a clerk; and, if so, they were clearly inadmissible, according to *Vosburgh* v. *Thayer*, 12 Johns. 462. Lightbody calls himself foreman, and says he never in his life made an entry in the plaintiff's books. This certainly does not look like his being a clerk. The object of the limitation doubtless was to withhold secondary evidence, with which the books alone must certainly be classed, until it shall appear that at least the party was without a regular clerk, whose business it is to notice the sales, and make entries as they occur, in the journal. He is, then, the only admissible witness. At any rate, this is so as to all the entries, unless it appear affirmatively that some of them were in fact not made by him. *McAllister* v. *Reab*, 4 Wend. 483. Several cases in states where the party's suppletory oath is allowed exclude books as evidence of transactions when it appears they were in fact known to third persons. Such a precaution would be of very little utility in this state, where the party is not sworn; and it is therefore commonly impossible to learn that others could testify. Lightbody was not in any sense a clerk for the purpose of verifying the books. A clerk can connect them with the sales, (many of which he usually makes himself,) and his original entries (to the general accuracy of which he can make oath) become themselves evidence of what he may in fact have forgotten. *Merrill* v. *Railroad Co.*, 16 Wend. 596–600, and cases there cited. It would clearly be going beyond the meaning of the qualification in *Vosburgh* v. *Thayer* to say

·that a man about a factory, who attends no further to sales than the mere delivery of goods, and noting the fact for a temporary purpose upon a slate, ·should be esteemed the only competent witness to establish all the sales and entries of his principal." In *McGoldrick* v. *Traphagen*, 88 N. Y. 334, the action was to recover for mechanical work done by the plaintiff's testator. It was proved that the plaintiff, when present, entered an account of the work ·done upon a slate, and, when absent, his foreman made the entries on a slate. The testator kept book-keepers, one of whom saw some work done, and made some of the entries on the slate. "It also appeared that the respondent kept no clerk who had anything to do with his accounts, or his business generally, but that he had a book-keeper, who transferred the same, as already stated. ·The accounts of the respondent were really kept by himself, or under his immediate direction, with the assistance of a book-keeper to transfer the original ·entries made from the slate to the day-book, and from the day-book to the ledger. This was done under his superintendence, and by his direction expressly the prices were carried out. * * * The points of the appellant's ·counsel do not distinctly claim that either of the respondent's book-keepers who had charge of the books alone was a clerk within the meaning of that term, and within the rule applicable to this species of evidence. Be that as it may, however, we think that the clerk intended was one who had something to do with, and had knowledge generally of, the business of his employer in reference to goods sold or work done, so that he could testify on that subject. It evidently means an employe whose duty it is to attend to the details of business, and thus is able to prove an account, and not one who, from his isolated position as a book-keeper, can have but little means of knowledge personally .as to the transactions done, or information relating thereto, except what is mainly derived from others. The latter position was that occupied by the book-keepers of the respondent, and they were in no sense clerks within the meaning of the law, as to evidence of this character." It will be observed ·that in the case first cited it was held that the foreman who delivered the identical articles charged, the price of which the plaintiff sought to recover, was not a clerk within the meaning of the rule, the court saying that the rule required that the party should be "without a regular clerk, whose business it is to notice the sales, and make entries as they occur in the journal." In the case last cited it was held that the book-keeper who transcribed the entries from the slate to the day-book was not a clerk within the rule; nor was ·the foreman of the shop, who made part of the original entries upon the slate. Both cases agree that the reason for this condition is that the best attainable ·evidence must be produced, and that entries must be excluded when the persons who made the entries can be produced. If this is the only reason for the ·condition, it is difficult to see why (parties being competent to testify) the same reason should not exclude books of account; at least in all cases where ·the parties who made the entries are living. When this condition was established, the person who made the sales or did the work usually entered the fact in an account-book, but now a sale is often made by one, a delivery by others, .and the entry by another, who sees nothing of the transaction; and, if books .are not evidence when a clerk is kept, great inconvenience will follow, for it is apparent that they will be inadmissible in the cases where the greatest ne·cessity for their reception exists. Unless books of account are to be received for what they are worth in cases where parties are accustomed to deal upon ·credit, and with full knowledge that the only record to be kept of their dealings is in the account-books of one, or both, it will be difficult for banks, ·corporations, and large establishments dealing with many persons, and having many transactions with each person, to recover for items charged in ac·count, as it is impossible for parties or their employes to remember the multi·tude of items which enter into the accounts of a moderate business.

In the case at bar the persons who rendered the services and made the dis-

bursements are dead, and so is the person for whom rendered. There is no room for suspicion that the entries were made, or the sums charged increased, after the death of the debtor, as they are all in the handwriting of Benjamin F Rexford or Lewis Kingsley, both of whom died before William G. Guernsey, for whom the services were rendered. The performance of many of the services recovered for was proved by several disinterested witnesses; and so was the fact that the books produced were those of Rexford & Kingsley; as well as the further fact (by persons who had settled with them) that they kept correct books of account. Robert A. Stanton testified that from the autumn of 1864 until January 1, 1866, (about 15 months) he was a clerk in the office of Rexford & Kingsley, performed the duties of a law clerk, copying papers chiefly, probably drawing papers from dictation, and attending generally to such business as would be intrusted to a clerk. E. A. Kingsley was in the office as a law clerk after Stanton left, but it does not appear for how long, nor what his duties were. This is the only evidence in respect to the employes of Rexford & Kingsley, or of Benjamin F. Rexford, or of the duties of their employes. Whether Stanton and Kingsley (the so-called clerks) were admitted to practice, or were merely students at law, does not appear. The period of their stay in the office covers but a small part of the time embraced by this account, and there is no evidence to show that either had personal knowledge of the services or disbursements charged in the account. I think no error was committed in receiving the books of account.

It was held in *Mygatt* v. *Wilcox*, 45 N. Y. 308, that an attorney is entitled to recover interest upon his disbursements from the time when they were made. It was also held in that case that an attorney is entitled to recover interest for his services from the date when payment is demanded where there is no contest over the value of the services sought to be recovered; which case seems to cover the case at bar. The referee allowed the claimant interest on the disbursements from the dates when they were made to September 26, 1874, (the date when the account was presented,) amounting to $249.04. He added this amount to the amount of the disbursements, and the sum so produced to the amount due for services September 26, 1874, and allowed interest on the whole sum from September 26, 1874, to the date of his report, December 17, 1887, thus compounding the interest on $249.04 from September 26, 1874, to December 17, 1887, 13 years, 2 months, and 21 days; which amounts (computed at 7 per cent. to January 1, 1880, and 6 per cent. thereafter) to the sum of $210.72, which must be deducted from the amount found due by the referee; and in all other respects his report is confirmed; and a judgment for the claimant is so ordered, with the referees's fees and disbursements, to be taxed.